**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| GARY MARTIN, Individually and on Behalf of All Others Similarly Situated, | **Case No. 2:20-cv-170** |
| | Jury Trial Demanded |
| v. | Collective Action (29 U.S.C. § 216(b)) |
| TAP ROCK RESOURCES, LLC | Class Action (Fed. R. Civ. P. 23) |

# ORIGINAL COMPLAINT

## SUMMARY

1. Gary Martin (Martin) brings this lawsuit against Tap Rock Resources, LLC (Tap Rock) to recover unpaid overtime wages and other damages owed under the Fair Labor Standards Act (FLSA) and the New Mexico Minimum Wage Act, NMSA §50-4-19, *et. seq.* (NMMWA).

2. Tap Rock suffered or permitted Martin, and the other workers like him, to work far more than 40 hours each week.

3. But Tap Rock did not pay these workers overtime.

4. Instead of paying overtime as required by state and federal law, Tap Rock misclassified these workers as independent contractors and paid them a daily rate with no overtime pay.

5. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. The Court has supplemental jurisdiction over the NMMWA claims pursuant to 28 U.S.C. § 1367 because they arise from the same common nucleus of operative facts as the FLSA claims asserted.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

9. Martin worked for Tap Rock in this District in Eddy and Lea Counties, New Mexico.

## THE PARTIES

10. Martin worked for Tap Rock as a Drilling Consultant from approximately February 2018 until October 2018.

11. Throughout his time with Tap Rock, Tap Rock paid Martin a day-rate with no overtime compensation.

12. Martin's consent to be a party plaintiff is attached as Exhibit A.

13. Martin represents at least two classes of similarly situated co-workers

14. First, Martin brings this action on behalf of himself and all other similarly situated workers paid by Tap Rock's day-rate system.

15. Tap Rock paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

16. The FLSA class of similarly situated workers consists of:

> **All oilfield workers employed by or performing work on behalf of Tap Rock who were classified as independent contractors and paid a day-rate without overtime during the past three years.** (the Day-Rate Workers).

17. Second, Martin represents a class of similarly situated oilfield workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

18. The NMMWA Class is defined as:

> **All oilfield workers employed by or performing work on behalf of Tap Rock in New Mexico who were classified as independent contractors and paid a day-rate without overtime during the past three years.** (the New Mexico Class).

19. The Day-Rate Workers and New Mexico Class will be referred to as the Putative Class Members.

20. Tap Rock Resources, LLC is a company doing business throughout the United States. Tap Rock may be served by serving its registered agent for service of process: Cogency Global, Inc., 1012 Marquez Place, Suite 106B, Santa Fe, New Mexico 87505.

## Coverage Under The FLSA

21. For at least the past three years, Tap Rock has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. For at least the past three years, Tap Rock has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. For at least the past three years, Tap Rock has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – including cell phones, hard hats, oil field equipment, and computers – that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

24. For at least the past three years, Martin and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

25. Tap Rock treated Martin (and other oilfield workers it classified as independent contractors) as employees and uniformly dictated the pay practices to which Martin and its other employees (including its so-called "independent contractors") were subjected.

26. Tap Rock's misclassification of Martin as an independent contractor does not alter its status as his employer for purposes of this FLSA collective action

**FACTS**

27. Tap Rock is an oil and gas company focused on Exploration & Production in the Delaware Basin.




28. To complete its business objectives, Tap Rock hires personnel to perform the necessary work.

29. Over the past three years, Tap Rock employed dozens of individuals – including Martin – in positions such as Rig Clerks, Completions Supervisors, Completions Consultants, Drilling Consultants, etc.

30. Even if the exact job titles and job duties may differ, the Putative Class Members are subjected to the same or similar illegal pay practices for similar work.

31. Specifically, Tap Rock classified these workers as independent contractors and paid them a flat sum for each day worked (regardless of the number of hours worked in that workweek).

32. Tap Rock uniformly failed to pay them overtime for hours worked in excess of 40 in a workweek.

33. For example, Martin worked for Tap Rock as a Drilling Consultant from approximately February 2018 until October 2018.

34. Throughout this time, Tap Rock paid him on a day-rate basis.

35. As a Drilling Consultant, Martin's primary job duties included observing drilling operations on the rig and ensuring that the team is following safety protocol.

36. Martin worked well in excess of 40 hours each week while employed by Tap Rock.

37. The work Martin performed was an essential part of Tap Rock's core business.

38. During Martin's employment with Tap Rock while he was classified as an independent contractor, Tap Rock exercised control over all aspects of his job.

39. Tap Rock did not require any substantial investment by Martin for him to perform the work required of him.

40. Tap Rock instructed Martin to use a staffing company to get paid.

41. Tap Rock determined Martin's opportunity for profit and loss.

42. Indeed, Tap Rock controlled all the significant or meaningful aspects of the job duties performed by Martin.

43. Tap Rock ordered the hours and locations Martin worked, owned and assigned the tools used, and determined the rates of pay he received.

44. Tap Rock controlled all aspects of Martin's job activities by enforcing mandatory compliance with Tap Rock's policies and procedures.

45. No real investment was required of Martin to perform his job.

46. He worked on Tap Rock's well sites and utilized equipment and software provided by Tap Rock to perform his job duties on Tap Rock's behalf.

47. These workers carry out the hands-on, day-to-day production work of Tap Rock.

48. Martin did not provide the equipment he worked with on a daily basis.

49. Tap Rock made the large capital investments in buildings, machines, drilling equipment, personnel, tools, and supplied in the business in which Martin worked.

50. Martin did not incur operating expenses like rent, payroll and marketing.

51. Martin was economically dependent on Tap Rock during his employment.

52. Tap Rock set Martin's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Tap Rock.

53. Tap Rock directly determined Martin's opportunity for profit and loss.

54. Martin's earning opportunity was based on the number of days Tap Rock scheduled him to work.

55. Very little skill, training, or initiative was required of Martin to perform his job duties.

56. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Tap Rock.

57. Virtually every job function was pre-determined by Tap Rock, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

58. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

59. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

60. The Putative Class Members did not have any supervisory or management duties and to the extent that they did, they performed those duties on Tap Rock's behalf.

61. For the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

62. Martin performed routine duties that were largely dictated by Tap Rock.

63. Tap Rock did not employ Martin on a project-by-project basis.

64. In fact, while Martin was classified as an independent contractor, he was regularly on call for Tap Rock and was expected to drop everything and work whenever needed.

65. Martin was directly interviewed by Tap Rock and hired by Tap Rock's Vice President Aaron Byrd (https://www.taprk.com/aaron-byrd-bio).

66. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

67. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for daily 12-hour shifts for weeks at a time.

68. Instead of paying them overtime, Tap Rock paid the Putative Class Members a day-rate.

69. Tap Rock denied the Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

70. Tap Rock's policy of failing to pay its independent contractors, including Martin, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

71. It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

72. Because Martin (and Tap Rock's other independent contractors) was misclassified as an independent contractor by Tap Rock, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

73. Tap Rock did not pay Martin on a salary basis.

74. Tap Rock did not pay the Putative Class Members on a salary basis.

75. Tap Rock paid Martin on a day-rate basis.

76. Tap Rock paid the Putative Class Members on a day-rate basis.

77. Despite knowing the FLSA and NMMWA's requirements, Tap Rock failed to pay Martin and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

78. Despite knowing the FLSA and NMMWA required overtime pay to Martin and the Putative Class Members, Tap Rock did not pay them overtime.

79. Tap Rock knew, or showed reckless disregard for whether, its day-rate pay policy violated the FLSA and NMMWA.

**FLSA VIOLATIONS**

80. Martin incorporates the preceding paragraphs by reference.

81. As set forth herein, Tap Rock violated the FLSA by failing to pay Martin and the Day-Rate Workers overtime at 1 and ½ times their regular rate of pay for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

82. Tap Rock's pay policy denied Martin and the Day-Rate Workers overtime compensation at the legal overtime rates required by the FLSA.

83. Tap Rock owes Martin and the Day-Rate Workers overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

84. Tap Rock knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Martin and the Day-Rate Workers is willful.

85. Due to Tap Rock's FLSA violations, Martin and the Day-Rate Workers are entitled to recover from Tap Rock for their unpaid overtime, liquidated damages, reasonable attorney fees, costs, and expenses of this action.

**NMMWA VIOLATIONS**

86. Martin brings this claim under the NMMWA as a Rule 23 class action.

87. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

88. At all relevant times, Tap Rock was subject to the requirements of the NMMWA.

89. At all relevant times, Tap Rock employed Martin and each member of the New Mexico Class as an "employee" within the meaning of the NMMWA.

90. The NMMWA required Tap Rock to pay its employees at 1 and ½ times the regular rate of pay for hours worked in excess of 40 hours in any one week.

91. Martin and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

92. Tap Rock had a policy and practice of misclassifying Martin and each member of the New Mexico Class and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

93. Martin and each member of the New Mexico Class seek unpaid overtime in amount equal to 1 and ½ times their regular rates of pay for hours worked in excess of 40 in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

94. Martin and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Tap Rock, as provided by the NMMWA.

95. The improper pay practices at issue were part of a continuing course of conduct, entitling Martin and New Mexico Class Members to recover for all such violations, regardless of the date they occurred

## CLASS & COLLECTIVE ACTION ALLEGATIONS

96. Martin incorporates all previous paragraphs and alleges that the illegal pay practices Tap Rock imposed on them were likewise imposed on the Putative Class Members.

97. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

98. On information and belief, the New Mexico Class contains more than 50 members.

99. Numerous other individuals who worked with Martin indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

100. Based on his experiences and tenure with Tap Rock, Martin is aware that Tap Rock's illegal practices were imposed on the Putative Class Members.

101. Tap Rock used day-rate contractors in New Mexico and Texas.

102. The Putative Class Members were all improperly classified as independent contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

103. Tap Rock is the, or at least an, employer of Martin and the Putative Class Members.

104. Tap Rock's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

105. Martin's experiences are therefore typical of the experiences of the Putative Class Members.

106. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

107. Martin has no interest contrary to, or in conflict with, the Putative Class Members.

108. Like the Putative Class Members, Martin has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

109. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

110. Absent this action, many members of the classes likely will not obtain redress of their injuries and Tap Rock will reap the unjust benefits of violating the FLSA and the NMMWA.

111. Furthermore, even if some of the Putative Class Members of the classes could afford individual litigation against Tap Rock, it would be unduly burdensome to the judicial system.

112. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

113. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members.

114. Among the common questions of law and fact are:

(a) Whether Tap Rock employed the Putative Class Members within the meaning of the FLSA and the NMMWA;

(b) Whether the Putative Class Members were improperly misclassified as exempt;

(c) Whether Tap Rock's decision to classify Putative Class Members as exempt was made in good faith;

(d) Whether Tap Rock's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

(e) Whether Tap Rock's violations of the FLSA was willful; and

(f) Whether Tap Rock's illegal pay practices were applied uniformly to all Putative Class Members.

115. Martin's claims are typical of the claims of the Putative Class Members.

116. Martin and the Putative Class Members sustained damages arising out of Tap Rock's illegal and uniform employment policy.

117. Martin knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a class or collective action.

118. Even if the issue of damages is somewhat individual in character, there is no detraction from the common nucleus of liability facts.

## JURY DEMAND

119. Martin demands a trial by jury.

## RELIEF SOUGHT

120. Martin therefore prays for judgment against Tap Rock awarding:

(a) All unpaid overtime and liquidated damages due to Martin and the Day-Rate Workers under the FLSA;

(b) All unpaid overtime and treble damages due to Martin and the New Mexico Class under the NMMWA;

(c) All attorney's fees, expenses, and costs of this action;

(d) Pre- and post-judgment interest at the highest rates allowed by law; and

(e) All other and further relief as may be necessary and appropriate.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Rex Burch*

Richard J. (Rex) Burch
Texas Bar No. 24001807
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Michael A. Josephson
State Bar No. 24014780
Andrew W. Dunlap
State Bar No. 24078444
Richard M. Schreiber
State Bar No. 24056278
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

**CONSENT TO JOIN WAGE CLAIM**

Print Name: Gary Martin

1. I hereby consent to participate in a collective action lawsuit against Tap Rock Resources to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I understand that this lawsuit is brought under the Fair Labor Standards Act, and consent to be bound by the Court's decision.

3. I designate the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH as my attorneys to prosecute my wage claims.

4. I authorize the law firm and attorneys at JOSEPHSON DUNLAP and BRUCKNER BURCH to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against the company.

Signature: Gary Martin (Oct 30, 2019)

Date Signed: 10/30/19