# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| GARY MARTIN, Individually and on Behalf of All Others Similarly Situated, | **Case No. 2:20-cv-170-WPJ-CEG** |
| | Jury Trial Demanded |
| v. | Collective Action (29 U.S.C. § 216(b)) |
| TAP ROCK RESOURCES, LLC | Class Action (Fed. R. Civ. P. 23) |

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

**Michael A. Josephson**
State Bar No. 24014780
**Richard M. Schreiber**
State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
rschreiber@mybackwages.com

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

# Table of Contents

1.  Introduction ..........................................................................................................1

2.  Factual Background...............................................................................................2

    A.  Tap Rock's operations................................................................................2

    B.  Plaintiffs and the Putative Class Members perform similar job duties. .........................2

    C.  Tap Rock's compensation plan paid Plaintiffs and Putative Class Members the same...............4

3.  Conditional Certification is Appropriate..............................................................7

    A.  Conditional Certification is warranted when workers are "similarly situated" ........................7

    B.  The Tenth Circuit uses the two-stage certification process.........................9

    C.  Plaintiffs are similarly situated to other Putative Class Members ...................9

    D.  Classification as Independent Contractors Does Not Preclude Conditional Certification and is a Merits Based Determination ..............................................13

    E.  Courts Routinely Grant Conditional Certification Based on Less Evidence.............................18

4.  Judicial Notice is Appropriate ...........................................................................20

    A.  Judicial Notice Protects Employee Rights ..............................................20

    B.  The Proposed Notice is Accurate and Informative.................................20

    C.  The Court Should Compel Tap Rock to Produce the Names and Contact Information for all Putative Collective Members ..............................................22

    D.  Notice & Consent Procedure .................................................................22

5.  Conclusion.........................................................................................................23

**TABLE OF EXHIBITS**

| Ex. | Document |
|---|---|
| 1 | Declaration of Corey Bragg |
| 2 | Pay Records of Corey Bragg |
| 3 | Pay Records of Gary Martin |
| 4 | Exemplar Invoices from Putative Class Members (filed under seal) |
| 5 | Exemplar Invoice to Staffing Company from Putative Class Members (filed under seal) |
| 6 | Exemplar Invoice to Tap Rock Identifying Tap Rock as the Employer (filed under seal) |
| 7 | Notice and Consent Forms |

TABLE OF AUTHORITIES

Page(s)

Cases

*Adamson v. Bowen,*
    855 F.2d 668 (10th Cir. 1988) ..................................................................................................19
*Aguilar v. Mgm't & Training Corp.,*
    No. 16-cv-050, 2017 WL 4277139 (D.N.M. Jan. 27, 2017)................................................13
*Avila v. SLSCO, Ltd.,*
    No. 3:18-CV-00426, 2020 WL 1891691 (S.D. Tex. Feb. 10, 2020) ................................17
*Baucum v. Marathon Oil Corp.,*
    2017 WL 3017509 (S.D. Tex. July 14, 2017) ....................................................................17
*Brown v. Money Tree Mortgage, Inc.,*
    222 F.R.D. 676 (D.Kan. 2004)............................................................................................21
*Bruback v. City of Albuquerque,*
    No. 10-cv-1113, 2012 WL 12863340 (D.N.M. Feb. 6, 2012) .............................................9
*Bryant v. Act Fast Delivery of Colorado, Inc.,*
    No. 14-CV-00870-MSK-NYW, 2015 WL 3929663 (D. Colo. June 25, 2015) ................20
*Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.,*
    310 F.R.D. 631 (D.N.M. 2015) ...................................................................................... 18, 19
*Calvillo v. Bull Rogers, Inc.,*
    267 F.Supp.3d 1307 (D.N.M. 2017)................................................................. 12, 14, 18, 26
*Carillo v. Schneider Logistics,*
    2012 WL 556309 (C.D.Cal. Jan. 31, 2012) ........................................................................25
*Chhab v. Darden Restaurants, Inc.,*
    2013 WL 5308004 (S.D.N.Y. Sept. 20, 2013)....................................................................26
*Daugherty v. Encana Oil & Gas (USA), Inc.,*
    838 F. Supp. 2d 1127 (D. Colo. Dec. 20, 2011) ................................................... 10, 16, 23
*Deakin v. Magellan Health, Inc.,*
    328 F.R.D. 427 (D.N.M. 2018) ........................................................................... 7, 9, 11, 26
*Dole v. Snell,*
    875 F.2d 802 (10th Cir.1989) ..............................................................................................19
*Dreyer v. Baker Hughes Operations, Inc.,* Civ. A.,
    No. H-08-1212, 2008 WL 5204149 (S.D. Tex. Dec. 11, 2008).........................................22
*Felps v. Mewbourne Oil Co., Inc.,*
    No. 18-811 MV/GJF, 2020 WL 2520136 (D.N.M. May 18, 2020) ...................................12
*Geer v. Challenge Fin. Investors Corp.,*
    No. 05-1109-JTM, 2005 WL 2648054 (D. Kan. Oct. 17, 2015) ........................................21
*Grayson v. K-Mart Corp.,*
    79 F.3d 1086 (11th Cir. 1996) ...............................................................................................8
*Green v. Drake Beam Morin, Inc.,*
    No. 11-CV-01063-REB-CBS, 2011 WL 6046940 (D. Colo. Dec. 6, 2011) .....................19
*Greenstein v. Meredith Corp.,*
    948 F.Supp.2d (D. Kan. 2013)...................................................................................... 11, 19

*Hancock v. Lario Oil & Gas Co.*,
   No. 219CV02140JARKGG, 2019 WL 3494263 (D. Kan. Aug. 1, 2019) ................................... 17, 23

*Harper v. Lovett's Buffet, Inc.*,
   185 F.R.D. 358 (M.D. Ala. 1999) ...........................................................................................20

*Henderson v. Inter-Chem Coal Co., Inc.*,
   41 F.3d 567 (10th Cir.1994) ...................................................................................................19

*Hewitt v. Helix Energy Sols. Grp., Inc.*,
   No. 19-20023, 2020 WL 1915124 (5th Cir. Apr. 20, 2020) ....................................................22

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989) ......................................................................................................8, 25, 27

*Hughes v. Gulf Interstate Field Servs., Inc.*,
   878 F.3d. 183, No. 17-3112, 2017 WL 6460123 (6th Cir. Dec. 19, 2017)..............................23

*Jones v. Cretic Energy Servs., LLC*,
   149 F.Supp. 761 (S.D. Tex. Dec. 9, 2015) .............................................................................21

*Keeton v. Found. Energy Mgmt., LLC*,
   No. 3:18-CV-01876-G, 2020 WL 487498 (N.D. Tex. Jan. 30, 2020) .....................................24

*Kibodeaux v. Wood Group Production*,
   2017 WL 1956738 (S.D. Tex. May 11, 2017).....................................................................17, 20

*Kidd v. Mathis Tire & Auto Serv., Inc.*,
   2014 WL 4923004 (W.D. Tenn. Sept. 18, 2014) .....................................................................26

*Krueger v. New York Tel. Co.*, No. Civ. A.,
   93 CIV. 0178, 1993 WL 276058 (S.D.N.Y. July 21, 1993) ....................................................20

*Landry v. Swire Oilfield Servs., L.L.C.*,
   252 F. Supp. 3d 1079 (D.N.M. 2017) ...............................................................................passim

*Lysyj v. Milner Distribution Alliance, Inc.*,
   2014 WL 273214 (D. Colo. Jan. 24, 2014) ........................................................................13, 23

*May v. E & J Well Servs., Inc.*,
   2014 WL 2922655..................................................................................................................16

*Medrano v. Flowers Foods, Inc.*,
   No. CV 16-350 JCH/KK, 2017 WL 3052493 (D.N.M. July 3, 2017) .....................................20

*Myers v. Marietta Mem'l Hosp.*,
   201 F. Supp. 3d 884 (S.D. Ohio 2016) ...................................................................................25

*Pacheco v. Aldeeb*,
   2015 WL 1509570 (W.D.Tex. Mar. 31, 2015) ........................................................................24

*Prejean v. O'Brien's Resp. Mgmt., Inc.*,
   Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) ......................17

*Qing Tian Zhuo v. Jia Xing 39th Inc.*,
   No. 14-CV-2848 SHS, 2015 WL 1514950 (S.D.N.Y. Apr. 1, 2015) .......................................24

*Reid v. Timeless Restaurants, Inc.*,
   2010 WL 4627873 (N.D. Tex. Nov. 5, 2010) ..........................................................................24

*Roadarte v. Board of Cty. Com'rs of Bernalillo Cty*,
   No. 14-cv-193, 2014 WL 10298032..........................................................................................10

*Sharp v. CGG Land (U.S.) Inc.*,
   No. 14-CV-0614-CVE-TLW, 2015 WL 222486 (N.D. Okla. Jan. 14, 2015)...........................23

*Sobolewski v. Boselli & Sons, LLC*,

No. 16-CV-01573-RM-STV, 2017 WL 3584872 (D. Colo. July 11, 2017)..........................24
*Solis v. Hooglands Nursery, L.L.C.,*
    372 F. App'x 528 (5th Cir. 2010)..........................................................................15
*Stallings v. Antero Res. Corp.,*
    No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610 (D. Colo. Mar. 12, 2018) ................16
*Stoute v. Bison Logistics, LLC d/b/a Source Energy Solutions,*
    Civ. A. No. 7:18-cv-0228-DC-RCG, 2019 WL 4061707 (W.D. Tex. June 10, 2019)........17
*Swartz v. D-J Engineering, Inc.,*
    No. 12-CV-1029-JAR, 2013 WL 5348585 (D. Kan. Sept. 24, 2013) ...............................21
*Tamez v. BHP Billiton Petroleum (Americas), Inc.,*
    2015 WL 7075971 (W.D. Tex. Oct. 5, 2015)............................................... 16, 17
*Thiessen v. General Electric Capital Corp.,*
    267 F.3d 1095 (10th Cir. 2001) ...................................................................passim
*Tolentino v. C & J Spec–Rent Servs. Inc.,*
    716 F.Supp.2d 642 (S.D.Tex.2010)..........................................................................24
*Turner v. Nine Energy Service, LLC,*
    Civ. A. No. H-15-3670, 2016 WL 6638849 (S.D. Tex. Oct. 4, 2016)...........................22
*Whitlow v. Crescent Consulting, LLC,*
    322 F.R.D. 417 (W.D. Okla. Aug. 14, 2017)...............................................................16
*Wilk v. Sketchers U.S.A., Inc. et al.,*
    Case No. EDCV 18-01921-JGB, 2019 WL 6448959 (CD Cal. Jul. 5, 2019) ...................24
*Williams v. Sprint/United Mgmt. Co.,*
    222 F.R.D. 483 (D. Kan. 2004)................................................................................9

Statutes

29 U.S.C. § 201 .................................................................................................................1
29 U.S.C. § 213 ...............................................................................................................15
29 U.S.C. § 216(b) ........................................................................................................ 1, 7

Rules

Fed. R. Civ. P. 23 ..............................................................................................................1

Regulations

29 C.F.R. § 541.602(a) ....................................................................................................22
29 C.F.R. § 541.604(b)............................................................................................. 15, 16
29 C.F.R. § 778.112............................................................................................... 1, 15
29 C.F.R. §§ 541.100(a)(1) ..............................................................................................22
29 C.F.R. §§ 541.100, .200, .300......................................................................................15

1.    **INTRODUCTION**

Plaintiff Gary Martin (Martin) and Opt-in Plaintiff Corey Bragg (Bragg) (collectively, "Plaintiffs") worked for Defendant Tap Rock Resources, LLC (Tap Rock), regularly working over 12 hours a day. Tap Rock compensated Plaintiffs for these long hours on a day rate basis, paying them a flat amount for all hours worked in a day without payment of overtime even though day rate workers are entitled to overtime under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*; 29 C.F.R. § 778.112. Tap Rock avoided paying Plaintiffs overtime by improperly classifying them as independent contractors. Plaintiffs' claims are straight forward: Tap Rock's compensation plan – improperly classifying its Drilling Consultants, Completions Consultants, Drilling Superintendents, Drilling Foreman, Production Consultants, Directional Drillers, Mud Engineers, and other oilfield workers as independent contractors and paying them a flat day rate – violated the FLSA because it failed to pay them overtime.[1] Plaintiffs thus ask the Court to conditionally certify and send Court-approved notice to the below putative class members:

> **All oilfield workers who were classified as independent contractors for Tap Rock Resources during the past 3 years who were paid a day-rate. (**Putative Class Members**)**

Plaintiffs seek conditional certification under the FLSA and authorization to send notice to other putative plaintiffs so they have the opportunity to join before their statute of limitations expires. Plaintiffs and the putative class of oilfield workers improperly classified as independent contractors and paid a flat day rate were denied overtime under Tap Rock's common compensation policy, and they are similarly situated as a result. The Court should allow Plaintiffs to send court-approved notice of this action to putative class members, informing them of their rights and providing them the opportunity to make a claim for their pay.

---

[1] Exhibits 4-6 are filed under seal pursuant to the Parties Protective Order. Doc. 48.

2.    FACTUAL BACKGROUND

A.    Tap Rock's Operations

Tap Rock is an oil and gas company focused on Exploration & Production in the Delaware

Basin. This includes operations in New Mexico and Texas.



https://www.taprk.com/operations (last visited July 27, 2020). In order to provide these services, Tap

Rock contracts with other companies to provide it with workers to perform the necessary work. Many

of these individuals worked for Tap Rock on a day-rate basis, were misclassified as independent

contractors during the relevant time period and make up the proposed class.

B.    Plaintiffs and the Putative Class Members Perform Similar Job Duties

All Tap Rock's oilfield workers assisted with the drilling and oil production process. Ex. 1, ¶13;

Doc. 1, ¶¶61, 71, 99; *see generally*, Ex. 4. Tap Rock scheduled the days and hours  drilling consultants

and other oilfield workers were required to work, provided the equipment necessary to perform their

duties, instructed them on how to perform their duties, and supervised their performance. Ex. 1, ¶¶6,

11; Doc. 1, ¶¶56-58. Plaintiffs worked as drilling consultants (also known as company men) for Tap

Rock between February 2018 until October 2018. Ex. 1, ¶3; Doc. 1 at ¶33.  Besides drilling consultants,

Tap Rock employed drilling superintendents, drilling foremen, completions consultants, production consultants, directional drillers, and mud engineers. *See generally*, Exs. 1 – 5.   Drilling consultants represent Tap Rock at the drilling site. Ex. 1, ¶14. They are tasked with ensuring drilling operations are conducted in accordance with Tap Rock's Drilling Program for the well and that drilling operations proceed smoothly. Ex. 1, ¶14. Drilling consultants are the "face" of Tap Rock at the drilling site, hence they are often referred to as the company man. *Id.* At a minimum, drilling consultants and Tap Rock's oilfield workers were required to work 14 days on and 14 days off as well as a day of driving. Ex. 1, ¶10. During the weeks they worked, they lived in trailers at the drilling site provided by Tap Rock. Ex. 1, ¶12. Some drilling consultants worked in tandem with another drilling consultant, each working opposite shifts. Ex. 1, ¶10. Tap Rock determined who would work which shift. *Id.* Drilling consultants working opposite shifts typically worked 16 hours per day. Ex. 1, ¶15.

As Tap Rock oilfield workers, Plaintiffs and the Putative Class Members were responsible for the operation of the rig at the wellsite. Ex. 1, ¶¶13, 16; Doc. 1 at ¶35. This was dictated by Tap Rock's Drilling Program documents, which Plaintiffs and the oilfield workers at the rig were expected to follow from start to finish. *Id.* This included cost analysis, supervising all operations and personnel at the rig, ordering all equipment, materials and supplies for well site operations, receiving all deliveries to the well site, and submitting daily reports to Tap Rock management. Ex. 1, ¶14 *Id.* For example, drilling consultants were required to check in, record and verify all deliveries to the well site, regardless of the time of day or night the delivery arrived. Ex. 1, ¶15. They were also required to submit written progress and activity reports to Tap Rock management daily. Ex. 1, ¶¶15, 20. These reports were prepared on computers supplied by Tap Rock using a software program supplied by Tap Rock. Ex. 1, ¶21. All Tap Rock's oilfield workers were also required by Tap Rock to attend safety meetings on a daily basis. Ex. 1, ¶23. All Tap Rock's day rate oilfield workers were required to complete Tap Rocks mandated safety and site training in connection with their employment. Ex. 1, ¶27.

3

The operation of the rig and the drilling of the well was specified in detail in Tap Rock's Drilling Program document, which drilling consultants and all other oilfield workers at the rig were expected to follow. Ex. 1, ¶16. The Drilling Program set out step by step what was to be done with regard to drilling the well from start to finish. *Id.* Plaintiffs and Putative Class Members' rig assignments came directly from Tap Rock. Ex. 1, ¶24. Bragg was supervised by Tap Rock's Drilling Manager/Engineer, Doug Sproul. Ex. 1, ¶¶17, 18. Plaintiffs and the Putative Class Members were required by Tap Rock to be at the drilling site 24 hours a day, seven days a week during the weeks they worked. Ex. 1, ¶29. Tap Rock required all of its oilfield workers classified as independent contractors to adhere to strict guidelines, expectations, and directives. Ex. 1, ¶31. These oilfield workers could not create or stray from established Tap Rock policies, practices, or procedures. *Id.* Drilling consultants regularly received emails from Tap Rock management and vendors throughout the day and evening. Ex. 1, ¶¶19, 20. They were expected by Tap Rock to respond to all such emails immediately. *Id.* While Plaintiffs were classified as independent contractor, they were hired by Tap Rock's Vice President of Operation, Aaron Byrd. Ex. 1, ¶9; Doc. 1, ¶65. Tap Rock's failure to Plaintiffs and the Putative Class members overtime was its standard pay practice and not limited to job position. Ex. 1, ¶33.

## C.   Tap Rock's Compensation Plan Paid Plaintiffs and Putative Class Members the Same

Tap Rock, through its staffing companies, compensated Plaintiffs and the Putative Class Members on a day-rate basis, paying them a flat sum for every day they worked regardless the number of hours worked in the day.  Ex. 1, ¶¶7, 8, 33; Doc. 1 ¶¶15, 31, 68; Ex. 5. It scheduled them to work on rotations of fourteen days on, fourteen days off.  Ex. 1, ¶10. However, Plaintiffs and the Putative Class Members would sometimes work additional days after 14. Exs. 2, 3. For example, from March 5, 2018 until April 10, 2018, Martin worked 37 consecutive days.

# INVOICE

| | Invoice # | GMJ20MAR18 |
|---|---|---|
| | Date | 20-Mar-18 |

To: RWDY Inc
950 Echo Lane, Suite 200
Houston, Tx 77024
Phone: 713-984-7554

Fm: Gary Martin Jr.

For consultant services rendered by:> **Gary Martin, Jr**
Operator and prospect name:> **TAP ROCK OPERATING, LLC**
Contractor and rig name:> **H&P 422**
Location and legal description:> **SEE BELOW**
AFE:> **SEE BELOW**
Network#

| Quantity | Description of charges | RATE | AMOUNT |
|---|---|---|---|
| 16 | Drilling Superintendent Foreman Services Rendered: | $2,024.00 | $32,384.00 |
| | (16 Days) March 5th thru March 20th 2017 | | |
| 16 | Per Diem | $200.00 | $3,200.00 |
| 395 | MILEAGE | $1.50 | $592.50 |

# INVOICE

| | Invoice # | GMJ11APR18 |
|---|---|---|
| | Date | 11-Apr-18 |

To: RWDY Inc
950 Echo Lane, Suite 200
Houston, Tx 77024
Phone: 713-984-7554

Fm: Gary Martin Jr.

For consultant services rendered by:> **Gary Martin, Jr**
Operator and prospect name:> **TAP ROCK OPERATING, LLC**
Contractor and rig name:> **H&P 422**
Location and legal description:> **SEE BELOW**
AFE:> **SEE BELOW**
Network#

| Quantity | Description of charges | RATE | AMOUNT |
|---|---|---|---|
| 12 | Drilling Superintendent Foreman Services Rendered: | $2,024.00 | $24,288.00 |
| | (12 Days) March 21st thru April 1st 2018 | | |
| 12 | Per Diem | $200.00 | $2,400.00 |
| | Zeus 204H; 350-10224-1 | | |
| | | | |
| 9 | Drilling Superintendent Foreman Services Rendered: | $2,024.00 | $18,216.00 |
| | (9 Days) April 2nd thru April 10th 2018 | | |
| 1 | Drilling Superintendent Foreman Travel day: | $2,024.00 | $2,024.00 |
| | (1 Days) April 11th 2018 | | |
| 9 | Per Diem | $200.00 | $1,800.00 |
| 1012 | MILEAGE HOME | $1.50 | $1,518.00 |

*See* Ex. 3. Martin received his day rate for each of those 37 days. Tap Rock scheduled Plaintiffs and the

Putative Class Members to work *at least* twelve-hour shifts on days they worked, but they almost always

ended up working longer.  Ex. 1, ¶11. Despite usually working over 100 hours in a workweek, Plaintiffs and the Putative Class Members did not receive overtime pay under Tap Rock's day-rate plan and did not receive any guaranteed amount for weeks they worked. Ex. 1, ¶¶7, 8, 33; Doc. 1, ¶¶73-74; Exs. 2-5. Further, it was not controlled (because it developed the pay practice) by a particular staffing company. Ex. 4.

Tap Rock's policy of treating oilfield workers as independent contractors, paying them a flat day rate and not paying them overtime was not limited to drilling consultants. *See* Ex. 4. Many other positions in the oil field were also treated as independent contractors by Tap Rock, paid a flat day rate and not paid overtime, such as Drilling Super Intendents, Drilling Foreman, Production Consultants, Directional Drillers, Rig Clerks, Completions Supervisors, Completions Consultants, and Mud Engineers. Ex. 1, ¶33; Doc. 1, ¶29; Ex. 4.

Records produced by Tap Rock confirm these allegations. *See generally* Ex. 2-5. The invoices and pay records confirm that the Plaintiffs and Putative Class Members were all compensated on a day rate basis regardless of staffing company or job positions. *Id.*



# INVOICE

| | | Invoice # | CBR28MAR18 |
| | | Date | 28-Mar-18 |

To: RWDY Inc
950 Echo Lane, Suite 200
Houston, Tx 77024
Phone: 713-984-7554

Fm: Corey Bragg (Rocking B Consulting, LLC)

For consultant services rendered by:> **Corey Bragg**
Operator and prospect name:> **TAP ROCK OPERATING, LLC**
Location and legal description:> **SEE BELOW**
AFE:> **SEE BELOW**
Network#

| Quantity | Description of charges | RATE | AMOUNT |
|---|---|---|---|
| 8 | Drilling Foreman Services Rendered: | $1,702.00 | $13,616.00 |
| | (8 Days) March 21st 2018 thru March 28th 2018 | | |
| 8 | Per Diem | $150.00 | $1,200.00 |
| 750 | Mileage | $1.25 | $937.50 |

Ex. 2.

# INVOICE

| | | Invoice # | GMJ02AUG18 |
|---|---|---|---|
| | | Date | 2-Aug-18 |

**To:** RWDY Inc
950 Echo Lane, Suite 200
Houston, Tx 77024
Phone: 713-984-7554

**Fm:** Gary Martin Jr.

| | |
|---|---|
| For consultant services rendered by:> | **Gary Martin, Jr** |
| Operator and prospect name:> | **TAP ROCK OPERATING, LLC** |
| Contractor and rig name:> | **H&P 422** |
| Location and legal description:> | **SEE BELOW** |
| AFE:> | **SEE BELOW** |
| Network# | |

| Quantity | Description of charges | RATE | AMOUNT |
|---|---|---|---|
| 11 | Drilling Superintendent Foreman Services Rendered: | $2,024.00 | $22,264.00 |
| | (11  Days) JULY 16-26, 2018 ( Includes Travel Day 7/16 ) | | |
| 11 | Per Diem | $200.00 | $2,200.00 |
| 1012 | HOME TO WORK | $1.50 | $1,518.00 |
| | Cosmo K 213H;  350-10229-1 | | |
| | | | |
| 7 | Drilling Superintendent Foreman Services Rendered: | $2,024.00 | $14,168.00 |
| | (7  Days) JULY 27- AUGUST 2,  2018 ( Includes Travel Day 8/2) | | |
| 7 | Per Diem | $200.00 | $1,400.00 |
| 375 | MILEAGE ON JOB- TO CYPRESS LOCATION ACCESS PAD & PLINY THE ELDER | $1.50 | $562.50 |
| 1012 | MILEAGE HOME | $1.50 | $1,518.00 |

Ex. 3.

## 3.   CONDITIONAL CERTIFICATION IS APPROPRIATE

### A.  Conditional Certification is Warranted When Workers are "Similarly Situated"

Under the FLSA, an employee may bring a collective action on behalf of "similarly situated" employees as a remedy for violation of the FLSA. *Deakin v. Magellan Health, Inc.*, 328 F.R.D. 427, 431 (D.N.M. 2018) (Johnson, CJ) (citing 29 U.S.C. § 216(b)) (internal quotations omitted).  The plaintiff's claims need not be **identical** to the potential opt-ins, but need only be **similar**. *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996) (emphasis added).

As the Supreme Court has explained, the  FLSA's collective action mechanism lowers litigation costs for  individual plaintiffs and decreases the burden on the courts through "efficient resolution in one  proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).  "These benefits . . .  depend on employees receiving accurate and timely notice concerning the pendency of the  collective action, so

that they can make informed decisions about whether to participate." *Id.*

While Plaintiffs bear the burden of demonstrating that he and the Putative Class Members are similarly situated, this burden is "very lenient" standard for conditional certification that "typically results in certification for the purpose of notifying potential plaintiffs." *Bruback v. City of Albuquerque,* No. 10-cv-1113, 2012 WL 12863340, at *3 (D.N.M. Feb. 6, 2012) ("This standard is a very lenient one and typically results in certification for the purpose of notifying potential plaintiffs.") (citing *Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir. 2001) *and Williams v. Sprint/United Mgmt. Co.,* 222 F.R.D. 483, 485 (D. Kan. 2004). In fact, this burden can be met by pleading facts that demonstrate that the Plaintiffs and the Putative Class Members were subject to a single plan or policy that violates the law (i.e., Tap Rock's policy of compensating the Putative Class Members with a day-rate and classifying them as independent contractors). *See Deakin,* 328 F.R.D. 432 (citing Thiessen, 267 F.3d at 1102-03); *see also Roadarte v. Board of Cty. Com'rs of Bernalillo Cty,* No. 14-cv-193, 2014 WL 10298032, at *2 ("In order to satisfy this initial notice-stage enquiry, Plaintiffs must present 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'") (quoting to *Thiessen,* 267 F.3d at 1102-03); *Daugherty v. Encana Oil & Gas (USA), Inc.,* 838 F. Supp. 2d 1127, 1133 (D. Colo. Dec. 20, 2011) ("Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege the plaintiffs were together the victims of a single decision, policy or plan."). "Indeed the standard for notice is a "lenient one that typically results in class certification."" Indeed, the standard for conditional certification is "a lenient one that typically results in class certification." *Landry v. Swire Oilfield Servs., L.L.C.,* 252 F. Supp. 3d 1079, 1116 (D.N.M. 2017) (quoting *Greenstein v. Meredith Corp.,* 948 F.Supp.2d at 1267 (D. Kan. 2013).

### B.  The Tenth Circuit Uses the Two-Stage Ad Hoc Certification Process

While "similarly situated" is not defined by statute, Courts in the Tenth Circuit apply the two-step ad hoc approach approved in *Thiessen* for making this determination. *See Deakin*, 328 F.R.D. 431 (citing *Thiessen*, 267 F.3d at 1105); *Calvillo v. Bull Rogers, Inc.*, 267 F.Supp.3d 1307 (D.N.M. 2017) (Johnson, CJ) (applying two-stage ad hoc approach to FLSA collective action certification).

The first step is known as the "notice stage," where the court determines whether there are other similarly situated workers. At this stage, Plaintiffs must provide only "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Thiessen*, 267 F.3d at 1102. This is a lenient standard "which typically results in conditional certification of a representative class." *Felps v. Mewbourne Oil Co., Inc.*, No. 18-811 MV/GJF, 2020 WL 2520136, at *2 (D.N.M. May 18, 2020) (citing *Aguilar v. Mgm't & Training Corp.*, No. 16-cv-050, 2017 WL 4277139, at *3 (D.N.M. Jan. 27, 2017)). "A court need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations." *Lysyj v. Milner Distribution Alliance, Inc.*, 2014 WL 273214, at *2 (D. Colo. Jan. 24, 2014).

At the second stage, which comes after the conclusion of discovery and often in the context of the defendant's motion to decertify the class, the court applies a stricter standard, including the application of at least four factors, to determine whether the case can proceed as a collective action. *Thiessen*, 267 F.3d at 1102-03.

### C.  Plaintiffs are Similarly Situated to Other Putative Class Members

The grant of conditional certification requires nothing more than a modest factual showing demonstrating that the Putative Class Members together were victims of a common policy or plan that violated the law. *Calvillo*, 267 F. Supp. 3d 1307, 1310 (D.N.M. 2017) (citing *Thiessen*, 267 F.3d at 1102-03). Although the Parties have yet to conduct extensive discovery, the record already contains

substantial allegations that Plaintiffs and the Putative Class Members are similarly situated and that they are victims of a single decision, policy, or plan wherein Tap Rock uniformly misclassified them as independent contractors and failed to pay them overtime compensation.

Plaintiffs and the Putative Class Members are similarly situated because they all:

- Were classified by Tap Rock as independent contractors;
- Were paid on a day-rate basis;
- Performed the same or similar job duties;
- Were not paid overtime for hours worked in excess of 40 hours in any given week;
- Worked at locations assigned by Tap Rock;
- Worked shifts assigned by Tap Rock; and
- Were subject to the same policies and procedures promulgated by Tap Rock.

*See, generally*, Exs. 1 – 6.

Tap Rock's day rate policy failed to compensate drilling consultants and other oilfield workers for overtime worked, making Plaintiffs and all putative collective members under the day rate plan similarly situated. The Department of Labor regulations concerning day rate plans require employers pay day rate employees for overtime worked. 29 C.F.R. § 778.112. Regulation 778.112 states:

> If the employee is paid a flat sum for a day's work or for doing a particular job, without regard to the number of hours worked in the day or at the job, and if he receives no other form of compensation for services, his regular rate is determined by totaling all the sums received at such day rates or job rates in the workweek and dividing by the total hours actually worked. <u>He is then entitled to</u> <u>extra half-time pay at this rate for all hours worked</u> <u>in excess of 40 in the</u> workweek.

*Id.* (emphasis added). Failure to pay overtime compensation on a day rate plan for hours worked over forty in a workweek is a violation of the FLSA.[2] *Solis v. Hooglands Nursery, L.L.C.*, 372 F. App'x 528,

---

[2] Tap Rock may claim that failure to pay overtime for day rate plans is not a violation of the FLSA if an exemption to the overtime requirement applies. *See* 29 U.S.C. § 213 (stating employers are not required to pay an employee overtime if she is covered by one of a handful of exemptions); 29 C.F.R. § 541.604(b) (stating day rate plans may satisfy the salary basis test if a minimum guarantee is paid as a salary). This argument does not preclude conditional certification since Tap Rock cannot show the positions satisfy the salary basis test required for the exemptions. *See* 29 C.F.R. §§ 541.100, .200, .300

529 (5th Cir. 2010). Importantly, this type of violation is a *per se* violation of the FLSA and does not necessarily depend on the job title or job responsibilities of each particular plaintiff, though they are similar in this matter. *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, 2015 WL 7075971, at * 3 (W.D. Tex. Oct. 5, 2015) (conditionally certifying class of day-rate workers classified as independent contractors regardless of job position where plaintiffs alleged they were paid a fixed amount per day without regard for the number of hours worked).

Courts in this Circuit routinely grant certification cases involving oilfield workers misclassified as independent contractors. *See, e.g., May* v. *E & J Well Servs., Inc.*, 2014 WL 2922655 at *2 (granting certification to a class of oilfield workers alleging they were misclassified as independent contractors and finding plaintiff "sufficiently alleged in his Complaint and likewise asserted in the declarations that there are numerous similarly situated workers who were misclassified as independent contractors and, in turn, not paid overtime wages."); *Daugherty v. Encana Oil & Gas (USA), Inc.,* 838 F.Supp.2d 1127, 1133 (D. Colo. Dec. 20, 2011) (conditionally certifying a class of oilfield "pumpers" classified as independent contractors); *Stallings v. Antero Res. Corp.*, No. 1:17-CV-01939-RM-NYW, 2018 WL 1250610, at *8 (D. Colo. Mar. 12, 2018), report and recommendation adopted, No. 17-CV-01939-RM-NYW, 2018 WL 2561046 (D. Colo. Apr. 16, 2018); *Whitlow v. Crescent Consulting, LLC,* 322 F.R.D. 417 (W.D. Okla. Aug. 14, 2017) (certifying a nationwide class of drilling consultant independent contractors paid a day-rate); *Hancock v. Lario Oil & Gas Co.*, No. 219CV02140JARKGG, 2019 WL

---

(requiring salary basis test for executive, administrative, and professional exemptions).  For a day rate compensation plan to constitute a salary under the test, it must include a "guarantee of at least the minimum weekly-required amount paid on a salary basis," and the guarantee amount must be reasonably related to the amount employees actually earn on a weekly basis.  29 C.F.R. § 541.604(b). Here, Plaintiffs and the Putative Class Members only received a day rate for days worked and did not receive any weekly guarantee. *See* Ex. 1, ¶8. This evidence is sufficient to constitute "substantial allegations" that Tap Rock maintained a common policy of not paying any minimum guarantee to day rate employees, making Plaintiffs and the Putative Class similarly situated on this issue.

3494263, at *1 (D. Kan. Aug. 1, 2019) (certifying a nationwide class of company men who were classified as independent contractors and paid a day rate).

And courts throughout the United States also grant certification in cases like this involving oilfield workers classified as independent contractors and paid a ray-rate. *See, e.g., See Nigh v. Energy Professionals Group, LLC*, No. 4:18-cv-01103 at *1 (S.D. Tex. Oct. 13, 2018) (conditionally certifying a class of oilfield independent contractors paid a day rate); *Avila v. SLSCO, Ltd.*, No. 3:18-CV-00426, 2020 WL 1891691, at *5 (S.D. Tex. Feb. 10, 2020) (hurricane relief workers paid a day rate or straight time for overtime from over 100 subcontractors); *Stoute v. Bison Logistics, LLC d/b/a Source Energy Solutions*, Civ. A. No. 7:18-cv-0228-DC-RCG, 2019 WL 4061707 at *7 (W.D. Tex. June 10, 2019). *also Kibodeaux v. Wood Group Production*, 2017 WL 1956738, at *1–2 (S.D. Tex. May 11, 2017) (granting conditional certification of a class of oilfield Drilling Consultants, Completions Consultants and Construction Consultants classified as independent contractors); *Baucum v. Marathon Oil Corp.*, 2017 WL 3017509, at *4 (S.D. Tex. July 14, 2017); *Hernandez v. Taylor Safety Consulting, LLC*, No. 2:16-cv-00198, Min. Entry dated Jan. 11, 2017 (S.D. Tex. Jan. 11, 2017) (safety technicians); *Tamez*, 2015 WL 7075971 at *1 (all oilfield personnel paid a day-rate); *Womack v. Superior Energy Servs., et al.*, Civ. A. No. 19-cv-074-DC-RCG, 2020, WL 1902566, at *5 (W.D. Tex. Jan. 16, 2020) (day rate flowback operators classified as independent contractors, regardless of staffing company); *Westbrook v. Advanced Solids Control, LLC*, No. 2:14-cv-131, Doc. 22 (S.D. Tex. Jan. 5, 2015) (centrifuge technicians); *Hansen v. Total Screen Sols., Inc.*, No. 2:13-cv-00242, Doc. 96 (S.D. Tex. May 27, 2014) (solids control technicians); *Prejean v. O'Brien's Resp. Mgmt., Inc.*, Nos. 12-1045, 12-1716, 12-1533, 2013 WL 5960674 (E.D. La. Nov. 6, 2013) (oil spill workers).

At the notice stage, courts apply a lenient test to determine whether the putative plaintiffs are similarly situated—that is, the "Plaintiff must provide some evidence to establish a colorable basis

showing the putative class members are victims of a single decision, policy or plan." *Calvillo*, 267 F.Supp.3d at 1307. The Court may consider several factors at this stage, "including whether potential class members: (i) have the same employer; (ii) are subject to the same employer practices; (iii) suffer the same method of calculation of wages owed; and (iv) allege FLSA violations based on the same conduct[.]" *Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty.*, 310 F.R.D. 631, 664 (D.N.M. 2015) (Browning, J.) (citation omitted). Furthermore, "some variation in the Plaintiff's specific job duties will not destroy a similarly situated designation at this stage of the litigation." *Landry*, 252 F.Supp.3d at 1120.

Here, Plaintiffs have presented sufficient evidence alleging Tap Rock was their (and the Putative Class Members') employer. Further, Plaintiffs and the Putative Class Members were all compensated on a day rate basis and did not receive any overtime pay even though they often worked well over 40 hours or more in a workweek. Ex. 1, ¶¶7, 8, 33; Exs. 2-5. Since they were all paid a day rate, the same method of calculation of back wages will be used. This shows Tap Rock maintained a common policy of not paying day rate workers overtime and classifying them as independent contractors in direct violation the FLSA. It is this policy that is the basis for Plaintiffs' claims, and its uniform application makes Plaintiffs similarly situated to all other Putative Class Members, regardless of job title or classification as employee or independent contractor. Indeed, the very fact that Tap Rock used the same compensation policy to individuals paid a day rate working in myriad different positions illustrates that it was commonplace and that day rate employees are similarly situated.

### D. Classification as Independent Contractors Does Not Preclude Conditional Certification and is a Merits Based Determination

Plaintiffs anticipate Tap Rock will attempt to defeat conditional certification by arguing the merits of this FLSA violation (i.e., that Plaintiffs do not meet the requirements of the economic realities

test[3] to qualify as an employee of Tap Rock and/or that he is exempt from overtime pay) instead of focusing on whether Plaintiffs and the Putative Class Members are "similarly situated." These arguments improperly place the cart before the horse.

Indeed, because extensive discovery has not yet occurred at the notice stage, courts do not review the underlying merits of the action in deciding whether to conditionally certify a class. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988) (holding that the district court, in making a class certification decision, must avoid focusing on the merits of the underlying case); *Landry,* 252 F. Supp. 3d 1086 (citing *Greenstein v. Meredith Corp.,* 948 F.Supp.2d 1266, 1267 (D. Kan. 2013)); *Bustillos*, 310 F.R.D. at 647 (D.N.M. 2015) (citing Thiessen, 267 F.3d at 1107-08); *Green v. Drake Beam Morin, Inc.*, No. 11-CV-01063-REB-CBS, 2011 WL 6046940, at *2 (D. Colo. Dec. 6, 2011) ("Plaintiffs' burden now is merely to present 'substantial allegations' that all members of the putative class were subject to a single decision, policy, or plan. . . Given that lenient standard, and the fact that little discovery has yet occurred in this case, . . . it would be legally erroneous and simply unfair to accept the invitation implicit in defendant's response. . . to investigate further the potential efficacy of the allegations at this stage."). And, as courts in this Circuit make clear, the notice stage "is not the appropriate juncture for the court weigh evidence or make factual determinations."

### i. Plaintiffs' Employment Classification Status is a Merits-Based Analysis and is Premature at the Notice Stage

The fact that this case involves the misclassification of employees as independent contractors

---

[3] To determine if Plaintiffs and the Putative Class Members employees under the FLSA, the Tenth Circuit applies the "economic reality" test. *Dole v. Snell,* 875 F.2d 802, 804 (10th Cir.1989). In applying the economic reality test, courts generally look at the following factors: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 570 (10th Cir.1994).

does not change the analysis. Courts in this Circuit routinely find that the issue of whether a worker was improperly classified as an independent contractor goes to the merits of the case. *See, e.g., Medrano v. Flowers Foods, Inc.*, No. CV 16-350 JCH/KK, 2017 WL 3052493, at *3 (D.N.M. July 3, 2017); *Bryant v. Act Fast Delivery of Colorado, Inc.*, No. 14-CV-00870-MSK-NYW, 2015 WL 3929663, at *3 (D. Colo. June 25, 2015) (Krieger, J.). In granting conditional certification over the employer's invitation to consider the economic realities test and purported individualized circumstances of the class members, Chief Judge Krieger stated as follows:

> The Defendants appear to misconstrue the role of the Court at this juncture. As noted, the Court does not weigh evidence or resolve factual disputes at the first stage of certification. Nor does the Court apply the economic realities test to the individual circumstances of the Plaintiffs or potential opt-in plaintiffs. Instead, it simply considers whether sufficient allegations have been made, supported by affidavits or declarations, to show that there are individuals "similarly situated" to the named plaintiffs.

*Id.*; *see also*, *Kibodeaux*, 2017 WL 1956738, at *3 (the economic realities test argument is "a merits-based argument, and courts are not to engage in merits-based analysis at the notice stage[.]").

This is because "even if Plaintiffs' claims turn out to be meritless or, in fact all Plaintiffs turn out not to be similarly situated, notification at this stage, rather than after further discovery, may enable more efficient resolution of the underlying issues in the case." *See Krueger v. New York Tel. Co.*, No. Civ. A. 93 CIV. 0178, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993); *see also*, *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 365 (M.D. Ala. 1999) ("subsequent discovery may reinforce or undermine" the preliminary finding of similarly situated). Any argument at this stage as to whether the Putative Class Members are employees versus independent contractors should thus be rejected because that is the ultimate issue in the case.

While the Court need not analyze the economic realities of Plaintiffs' and the Putative Class Members' relationship with Tap Rock, Plaintiffs have still presented sufficient evidence to satisfy his

minimal burden at the notice stage. Plaintiffs were hired for the position by a Tap Rock Vice President; they worked for Tap Rock for eight months; Tap Rock scheduled Plaintiffs' and Putative Class Members' work days and hours; Tap Rock provided the necessary equipment; and Tap Rock instructed Plaintiffs how to perform their duties and supervised their work. *See generally*, Exs. 1 – 5, and Doc. 1. And, Tap Rock's staffing companies' documents confirm that it was the employer. *See* Ex. 6. All of this evidence is sufficient to establish that the misclassified independent contractors were similarly situated for purposes of notice.

### ii. Tap Rock's Class-Wide Exemption Defenses Require a Merits-Based Analysis and are Premature at the Notice Stage.

Plaintiffs further anticipate Tap Rock will argue against conditional certification claiming that some of its oilfield workers, like drilling consultants, are exempt from overtime pay under the executive, administrative, and/or professional exemptions. See Doc. 37 at ¶11. By arguing such exemptions, Tap Rock will likely make the standard defense argument against conditional certification – that no two workers are alike and that the Court must analyze each worker's duties independently instead of as a group.

First, Courts in this Circuit and throughout the Country routinely grant conditional certification without making factual determinations as to the merits of exemption defenses because exemption defenses "are merits-based defenses to FLSA claims that courts [] typically hold to be irrelevant at this initial, notice stage of the case."[4] And even if an exemption defense may apply to the

---

[4] *See Thiessen*, 267 F.3d at 1103 (stating that disparate factual and employment settings of individual plaintiffs and various defenses available to defendant that are individual to each plaintiff are factors to be considered at the second stage analysis); *Swartz v. D-J Engineering, Inc.*, No. 12-CV-1029-JAR, 2013 WL 5348585, at * 6 (D. Kan. Sept. 24, 2013) (refusing to consider employer's arguments that conditional certification was improper based on alleged exemption defenses); *Geer v. Challenge Fin. Investors Corp.*, No. 05-1109-JTM, 2005 WL 2648054, at *4 (D. Kan. Oct. 17, 2015) (same); *Brown v. Money Tree Mortgage, Inc.,* 222 F.R.D. 676, 682 (D.Kan. 2004) (refusing to consider "legal and factual

case (they do not here), that is not enough to prevent conditional certification of a class. *Turner*, 2016 WL 6638849 at *7; *Dreyer*, 2008 WL 520419 at * 3.

Second, Tap Rock's anticipated tactic also ignores the single-issue common to all of Tap Rock's claimed exemption defenses – the fact that each of these exemptions required Tap Rock to pay the oilfield workers on a "salary basis." *See* 29 C.F.R. §§ 541.100(a)(1) (executive exemption requires salary basis); 541.200(a)(1) (administrative exemption requires salary basis); 541.300(a)(1) (professional exemption requires salary basis). But Tap Rock did not pay these workers on a salary basis – it paid them all a day-rate. Ex. 1 at ¶8; *see, e.g.*, Exs. 2-5.

Tap Rock never guaranteed the Putative Class Members a predetermined weekly (or less frequent) amount of $455 irrespective of days worked. *See id.* In fact, the opposite is true. Tap Rock only paid these workers a day-rate for days that they actually worked. *Id.* But the regulation provides that salary pay "is not subject to reduction because of variations in the…quantity of the work performed" and that "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." 29 C.F.R. § 541.602(a).

Courts in other Circuits have determined that a day rate is not a guaranteed salary. *Hewitt v.*

---

issues unique to each employee such as whether the employee was an exempt employee" for conditional certification at the notice stage); *see also, Jones v. Cretic Energy Servs., LLC*, 149 F.Supp. 761, 774 (S.D. Tex. Dec. 9, 2015); *Turner v. Nine Energy Service, LLC*, Civ. A. No. H-15-3670, 2016 WL 6638849, at *7 (S.D. Tex. Oct. 4, 2016) (Johnson, M.J.), *adopted at* 2016 WL 6652747 (S.D. Tex. Nov. 9, 2016) (Lake, J.); *McPherson v. LEAM Drilling Systems, LLC*, No. 4:14-CV-02361, Doc. 84 (S.D. Tex. Mar. 30, 2015) (granting conditional certification of nationwide class of oilfield workers over employer's objections that individualized analyses were required due to various exemption defenses and noting that employer could later move to decertify the class); *Dreyer v. Baker Hughes Operations, Inc.*, Civ. A. No. H-08-1212, 2008 WL 5204149, at *2-3 (S.D. Tex. Dec. 11, 2008) (rejecting employer's argument that the application of multiple FLSA exemptions counseled against conditional certification because "exemptions are merits-based defenses to an FLSA claim" that "cannot defeat conditional certification.").

*Helix Energy Sols. Grp., Inc.*, No. 19-20023, 2020 WL 1915124, at *3 (5th Cir. Apr. 20, 2020) (finding

that a day rate is not a guaranteed salary); *See Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d. 183, No.

17-3112, 2017 WL 6460123, at *1 (6th Cir. Dec. 19, 2017) (whether a worker receives a "guaranteed"

salary "does matter" and is a prerequisite to any white-collar exemption defense). Because Tap Rock

cannot meet the salary basis test, the Putative Class Members are non-exempt, regardless of their job

duties or other individualized characteristics.

E.   **Courts Routinely Grant Conditional Certification Based on Less Evidence.**

Plaintiffs presented this Court with the declaration of Opt-in Plaintiff Bragg, pay records from

Bragg, pay records from Martin, and invoices from numerous individuals paid under Tap Rock's day

rate compensation policy. *See generally*, Exs. 1 – 5. In this Circuit, Courts have found a single employee's

affidavit, coupled with the allegations in a complaint, sufficient to satisfy the "substantial allegations"

requirement for conditional certification. *See, e.g., Lysyj v. Milner Distrib. All., Inc.*, No. 13–cv–01930–

RM–MJW, 2014 WL 273214, at *3 (D. Colo. Jan. 24, 2014) ("Even looking solely to the allegations of

the complaint and the affidavit of David Rhoads, this Court finds that Plaintiffs have satisfied the

minimal burden necessary to the conditional certification of a collective action under § 216(b)."

(quotations omitted)); *Hancock*, 2019 WL 3494263, at *1 (D. Kan. Aug. 1, 2019) (certifying a

nationwide class of company men who were classified as independent contractors and paid a day rate

based on a single declaration and his pay records); *Sharp v. CGG Land (U.S.) Inc.*, No. 14-CV-0614-

CVE-TLW, 2015 WL 222486, at *2 (N.D. Okla. Jan. 14, 2015) (the complaint and affidavit present

"substantial allegations that the putative class members were together the victims of a single decision,

policy, or plan," namely that defendant failed to include the "hot shot" payment in the regular rate of

pay for purposes of calculating overtime for its hourly non-exempt employees); *see also, Daugherty,* 838

F. Supp. 2d at 1133 (finding allegations by plaintiff that he did not receive overtime pay and that he

believed others did not receive overtime pay, coupled with his declaration and that from one other employee, sufficient to meet burden for conditional certification); *Sobolewski v. Boselli & Sons, LLC*, No. 16-CV-01573-RM-STV, 2017 WL 3584872, at *2 (D. Colo. July 11, 2017), report and recommendation adopted, No. 16-CV-01573-RM-STV, 2017 WL 4586108 (D. Colo. Oct. 16, 2017) (granting conditional certification based on a single employees affidavit).

Courts throughout the nation routinely grant conditional certification on only one or two declarations. *See, e.g. Keeton v. Found. Energy Mgmt., LLC*, No. 3:18-CV-01876-G, 2020 WL 487498, at *4 (N.D. Tex. Jan. 30, 2020) (granting conditional certification with one declaration); *Pacheco v. Aldeeb*, 2015 WL 1509570, at *8 (W.D.Tex. Mar. 31, 2015) (two declarations attesting "many" current and former employees would join lawsuit sufficient basis for conditional certification); *Bryant v. Am. Commercial Lines, LLC*, G-11-297 (S.D. Tex. Feb. 24, 2012)(granting conditional certification filed by a single plaintiff with no opt-ins); *Reid v. Timeless Restaurants, Inc.*, 2010 WL 4627873, at *3 (N.D. Tex. Nov. 5, 2010) (finding "evidence from two individuals who experienced similar employment pay practices ... and [who] stated that they are aware of others who also experienced them" sufficient to support motion for conditional certification); *Tolentino v. C & J Spec–Rent Servs. Inc.*, 716 F.Supp.2d 642, 653 (S.D.Tex.2010) (finding two declarations of similarly situated individuals and complaint sufficient to demonstrate existence of employees who would opt-in); *Coffin v. Blessey Marine Servs., Inc.*, No. H-11-0214 (S.D.Tex. July 28, 2011) (Atlas, J.) (noting that there was no evidence that any other employees aside from the plaintiff had knowledge of the lawsuit and granting conditional certification despite no showing of additional individuals desiring to join); *Wilk v. Sketchers U.S.A., Inc. et al.*, Case No. EDCV 18-01921-JGB, 2019 WL 6448959 *2 (CD Cal. Jul. 5, 2019) (granting conditional certification with no declaration from plaintiff); *Ludlum*, No. 18-cv-5192, Doc. 32, at 10 (granting conditional certification with one declaration, pay stubs, and offer letter); *Qing Tian Zhuo v. Jia Xing*

*39th Inc.*, No. 14-CV-2848 SHS, 2015 WL 1514950, at \*3 (S.D.N.Y. Apr. 1, 2015) (granting Zhuo's motion for conditional collective certification which is supported by the allegations in his complaint and his two declarations sworn under penalty of perjury); *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884, 896 (S.D. Ohio 2016) (granting motion for conditional collective action certification and noting that "in at least one instance a court in this district has certified a class based only on two declarations"); *Carillo v. Schneider Logistics*, 2012 WL 556309, at \*11 (C.D.Cal. Jan. 31, 2012) (holding that two declarations were sufficient to warrant conditional certification). The evidence presented by Plaintiffs is sufficient to meet the standard for conditional certification.

## 4.   JUDICIAL NOTICE IS APPROPRIATE

### A.   Judicial Notice Protects Employee Rights

The benefits to the judicial system of collective actions "depend upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche,* 493 U.S. at 170.  Accordingly, courts are encouraged to become involved in the notice process early to ensure "timely, accurate, and informative" notice and to help maintain control of the litigation.   *Id.* at 171–72. Court-authorized notice also serves the "legitimate goal of avoiding a multiplicity of duplicative suits." *Id.* at 172.  This case is an appropriate case to send court-approved notice.

### B.   The Proposed Notice is Accurate and Informative

Judicially authorized notice of a collective action under § 216(b) must be "timely, accurate, and informative." *Hoffmann-La Roche*, 493 U.S. at 172.  Plaintiffs' proposed notice will provide employees with an accurate description of this lawsuit as well as their rights under the FLSA. (*See* Ex. 6)  The proposed notice achieves the ultimate goal of providing employees accurate and timely notice concerning this collective action and should be adopted.

Plaintiffs requests that the Court authorize notice in the form of (1) mailing of the notice by Plaintiff's counsel to all members of the putative collective class; (2) emailing of the notice by Plaintiff's counsel to all members of the putative collective class to their last known personal email address; and 3) text message notice to the putative collective class to their last known phone number. This Court and District have held that issuance of notice through these methods will ensure that all potential class members are reached as soon as possible. *Deakin*, 328 F.R.D. 436 (allowing notice to be sent by mail, email, and notice); *Calvillo*, 267 F.Supp.3d 1314 (same); *Landry*, 252 F. Supp. 3d at 1130 (allowing notice by mail, email, and text message because these methods are the most effective);. Because oil field workers' schedules often require working weeks at a time on location away from their homes, email and text message notice is essential to make sure they receive notice and are given the opportunity to join the case. Ex. 1, ¶35.

Plaintiffs request that the notice period be set for 60 days, which is consistent with FLSA notice practices in other courts. *Landry*, 252 F. Supp. 3d at 1131 (allowing for a 75 day notice period where the workers, like here, worked in the oilfield and were away from their homes for extended periods of time). As mentioned, oil field workers frequently spend weeks working on oil rigs located far from their residences, making a notice period shorter than 60 days inappropriate for effective notice of the lawsuit.

Plaintiffs also request the Court authorize Plaintiffs' counsel to send a reminder notice in the same forms, to putative class members 30 days before the deadline to "opt in." *See Kidd v. Mathis Tire & Auto Serv., Inc.*, 2014 WL 4923004, at *3 (W.D. Tenn. Sept. 18, 2014) (allowing reminder notice to be sent); *Chhab v. Darden Restaurants, Inc.*, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) (same).

**C.   The Court Should Compel Tap Rock to Produce the Names and Contact Information for all Putative Collective Members**

The Court should also order Tap Rock to provide Plaintiffs a list of all putative collective members and their contact information. The identification of these individuals is necessary for Plaintiffs to provide those individuals with notice of the action as contemplated by the FLSA. *See Hoffmann-La Roche*, 493 U.S. at 170 (affirming district court decision permitting discovery of the names and addresses of the putative class). This is precisely the reason why the production of a list of potential class members is routinely disclosed in FLSA collective actions. *Id.* at 165.

Accordingly, Plaintiffs request the Court order Tap Rock to provide their counsel with the names, current or last known physical addresses, email addresses (both personal and work, if available), and telephone numbers for current and former workers fitting the description of the conditionally certified class. Production of this information in FLSA cases is routine. *See, e.g., Landry,* 252 F. Supp. 3d at 1131 (ordering employer to disclose last known home addresses, phone numbers, email addresses, dates of birth, and dates of employments of putative class for dissemination of notice).

**D.   Notice & Consent Procedure**

To facilitate the Notice process and preserve the rights of those who have not yet opted-in, Plaintiffs propose the attached Notice and Consent Form for approval by the Court, attached herein as Ex. 6. Variations of the proposed Notice and Consent Form have been adopted by courts in several districts throughout the United States. The same is true of Plaintiffs' proposed opt-in timeline:

| DEADLINE | SUBJECT |
|---|---|
| **10 Days From Order Approving Notice to Potential Class Members** | Tap Rock to disclose the names, last known addresses, email addresses (both personal and work, if available), phone numbers, and dates of employment of those described in the above-referenced group of Putative Class Members to be notified in a usable electronic format |
| **20 Days From Order Approving Notice to Potential Class Members** | Plaintiffs' Counsel shall send by mail, email, and text message the Court approved Notice and Consent Form to the Putative Class Members. |
| **60 Days From Date Notice is Mailed to Potential Class Members** | The Putative Class Members shall have 60 days to return their signed Consent forms to Plaintiffs' counsel for filing with the Court. |
| **30 Days from Date Notice is Mailed to Potential Class Members** | Plaintiffs' Counsel is authorized to send by mail, email, and text message a second identical copy of the notice/consent forms to the Putative Class Members. Plaintiffs may follow up with the Putative Class Members whose Notice Packet was returned as undeliverable with a phone call to obtain an updated address and/or email address to ensure receipt of the Notice packet. |

5.    **CONCLUSION**

Plaintiffs have met their burden of providing a "substantial allegations" to support their claims themselves and other day rate Tap Rock workers classified as independent contractors are similarly situated and that conditional certification and court-authorized notice is warranted.

Respectfully submitted,

By: */s/ Richard M. Schreiber* _____

**Michael A. Josephson**
State Bar No. 24014780
**Richard M. Schreiber**
State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77005
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com
adunlap@mybackwages.com

**AND**


**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

On July 27, 2020, I served a copy of this document on all registered parties and/or their counsel of record via the Court's CM/ECF system.

*/s/ Richard M. Schreiber* _____
Richard M. Schreiber

## CERTIFICATE OF CONFERENCE

This motion is necessary because Plaintiff and Defendant cannot agree to the conditional certification of this matter.

/s/ Richard M. Schreiber
Richard M. Schreiber