# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

———————————

GARY MARTIN, individually and on behalf of
all others similarly situated,

          Plaintiff,

        vs.                                      Case No. 2:20-cv-170-WJ-CEG

TAP ROCK RESOURCES, LLC,

          Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING RUSCO OPERATING, LLC'S MOTION TO INTERVENE

**THIS MATTER** comes before the Court amidst a potential class action lawsuit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Gary Martin (named Plaintiff) joined by Harvey Boyette and Derek Moore ("Boyette" and "Moore" or together, the "Opt-In Plaintiffs") seek to recover unpaid overtime wages working for an oil and gas company, Tap Rock Resources, LLC ("Tap Rock" or "Defendant"). In the instant motion, however, a third party seeks to intervene in said litigation and, eventually, compel the Opt-In Plaintiffs into arbitration. *See* Doc. 115 (the "Motion"). The third party is RUSCO Operating, LLC ("RUSCO"), the company that provided the online platform through which Defendant hired the Opt-In Plaintiffs. Having reviewed the applicable law and the pleadings, the Court finds that RUSCO may intervene both as of right and as of the Court's discretion. Therefore, the Motion is hereby **GRANTED**.

## BACKGROUND

Gary Martin—later joined by the Opt-In Plaintiffs in December 2020—filed the instant action on January 26, 2020 seeking to recover unpaid overtime wages while working for

Defendant, an oil and gas company. A critical question to said litigation is whether Martin and the Opt-In Plaintiffs are best classified as "independent contractors" or "employees." If Martin and the Opt-In Plaintiffs are classified as employees, the FLSA will attach and obligate Tap Rock to pay overtime wages. While marching toward this ultimate question, the parties over the past two years have litigated various matters: a motion to dismiss, a fully briefed yet pending motion for conditional certification, a third-party indemnity complaint, limited discovery, and class-wide mediation. Consequently, this litigation has been stayed for most of its existence.

With this procedural history in mind, the most essential aspect of resolving this Motion is understanding how RUSCO fits into the big picture. RUSCO is first and foremost an intermediary. It provides a forum through which potential workers[1] advertise their talents to oil-and-gas companies, and through which those companies hire workers for individual projects. RUSCO also provides administrative functions. For example, upon performing specified tasks for a company, a worker files an invoice with RUSCO, and then the worker is paid in accordance with the invoice, less a percentage compensating RUSCO for its services. Such is the arrangement between the Opt-In Plaintiffs and Tap Rock.

In their initial agreements with RUSCO, the Opt-In Plaintiffs agreed to two key stipulations before accessing RUSCO's platform. First, they agreed to be classified as "independent contractors." According to RUSCO, this classification allows workers more control over their economic destiny, additional flexibility in choosing their work, as well as favorable tax treatment. The classification also permits operators to better adjust their workforce based on the varying demands associated with the boom-and-bust cycles of oil and gas markets. RUSCO credibly asserts that its entire business revolves around this independent contractor classification.

---

[1] These workers are skilled professionals with expertise in a variety of oilfield services, ranging from drilling fluids engineers, to coiled tubing completions consultants and health and safety experts.

Second, in accessing RUSCO's platform the Opt-In Plaintiffs agreed to the following broad arbitration provision:

> This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms.

Doc. 115-3. While both Opt-In Plaintiffs agreed to this provision, another updated agreement important to this Motion is worth mentioning. A few years after Boyette and Moore signed the above provisions, RUSCO's parent company underwent a corporate re-branding and name change from "RigUp" to "Workrise." It is for this reason, RUSCO suggests, that in January 2021 RUSCO's business team sent to thousands of current and former workers, including the Opt-In Plaintiffs, an updated arbitration agreement:

> This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of the Project, the Project Details, or this Agreement, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of this Agreement.

Doc. 115-2.[2] Despite already participating in the instant litigation and being represented by counsel, Boyette—and not Moore—executed this updated agreement with RUSCO, though he now disclaims any memory of this happening.[3]

Through the instant Motion, RUSCO seeks to intervene in the instant lawsuit to enforce these arbitration agreements and defend its "independent contractor" classification. In response, the Opt-In Plaintiffs argue that this lawsuit centers on Tap Rock's—not RUSCO's—obligations

---

[2] Boyette also explicitly agreed that the arbitration provision "shall extend to any entity you sue concerning a Work Dispute and allege is your employer." Doc. 115-2. Furthermore, Boyette stipulated that any RUSCO "Customer" like Tap Rock is "an intended third-party beneficiary" of the arbitration provision." *Id.*

[3] Although not as important as the other provisions, both Opt-In Plaintiffs also agreed to the following: "You understand and agree that, by entering into these terms, you and RigUp are each waiving the right to a trial by jury or *to participate in a class action*." Doc. 115-5 (emphasis added).

and liability. Thus, the Court should not allow RUSCO to intervene. Looming in the background, however, is a growing track record of District Courts around the country, including this one, rejecting most of Plaintiffs' arguments alleged herein.[4] Each of these Courts have scrutinized the same arguments from the same attorneys now representing Plaintiffs facing virtually the same facts. Time and time again, each of these Courts have summarily denied Plaintiffs' attempts to prevent third-party intermediaries from intervening in their FLSA lawsuits.

Given these circumstances, the Court now determines whether intervention is warranted, first as of right and second as of the Court's discretion.

## DISCUSSION

### I.      Intervention as of Right

Under Rule 24(a) of the Federal Rules of Civil Procedure, a nonparty seeking to intervene in litigation as of right must establish (1) timeliness, (2) an interest relating to the property or transaction that is the subject of the action, (3) the potential impairment of that interest, and (4) inadequate representation by existing parties. *Kane County, Utah v. United States*, 928 F.3d 877, 889 (10th Cir. 2019) (citing *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017)). The Tenth Circuit takes a "liberal approach to intervention and thus favors the granting of motions to

---

[4] As the Court previously recognized in *Bock v. Salt Creek Midstream LLC*, "there is a growing body of intervention jurisprudence among district courts in similar cases, with the trend decidedly in favor of granting intervention." 2020 WL 3989646, at *7 (D.N.M. July 15, 2020) (same Plaintiff's counsel as instant action) (listing several additional cases with same Plaintiff's counsel), *adopted by* 2020 WL 5640669 (D.N.M. Sept. 22, 2020); *see also Becker v. Delek US Energy, Inc.*, 2020 WL 4604544 (M.D. Tenn. August 11, 2020); *Altenhofen v. S. Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 3547947, at *1 (W.D. Ky. June 30, 2020) (intervention granted to staffing agency that employed plaintiffs pursuant to arbitration agreements, but which was not named in FLSA class action) (plaintiffs' counsel include Plaintiffs' counsel in instant action); *Ferrell v. SemGroup Corporation, et al.*, 485 F.Supp.3d 1334 (N.D. Ok. 2020) (same) (counsel again overlap), *overruled on other grounds at* 2021 WL 5576677 (10th Cir. Nov. 30, 2021); *Robertson v. Enbridge (U.S.) Inc.*, 2020 WL 2104911, at *1 (W.D. Pa. May 1, 2020) (same) (counsel again overlap); *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F.Supp.3d 1168 (D. Wyo. 2020) (same) (counsel again overlap).

intervene." *Zinke*, 877 F.3d at 1164 (citing *Coal. of Ariz./N.M. Cities for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 841 (10th Cir. 1996)).

### A.  Timeliness

"The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. U.S. Dep't of Intererior*, 736 F.2d 1416, 1418 (10th Cir. 1984)). "When the applicant appears to have been aware of the litigation but has delayed unduly seeking to intervene, courts generally have been reluctant to allow intervention." 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1916, at 539–40 (3d ed. 2007). The Tenth Circuit requires "the prejudice to other parties . . . be prejudice caused by the movant's delay, not by the mere fact of intervention." *Oklahoma ex rel. Edmondson v. Tyson Foods*, 619 F.3d 1223, 1236 (10th Cir. 2010).

According to Plaintiffs, RUSCO did nothing for nine months[5] before seeking to intervene in this matter, thereby prejudicing the Opt-In Plaintiffs. During that time, the parties engaged in "substantial" discovery, attempted mediation on a class-wide basis, and finished briefing on conditional certification. Granting the motion would, thus, force the Opt-In Plaintiffs to re-litigate the same issues in a more restrictive setting, wasting time and resources for all concerned. For these reasons, Plaintiffs assert that the Motion was untimely. Plaintiffs' nine-month timeline, however, rests on the faulty assumption that RUSCO *must have known* about the instant lawsuit when it sent an updated arbitration agreement to the Opt-In Plaintiffs in January 2021—nine

---

[5] Plaintiffs reach this figure by arguing that RUSCO must have discovered the instant lawsuit when it communicated with the Opt-In plaintiffs by having them execute a new arbitration agreement in January 2021, nine months before RUSCO filed the instant motion on September 9, 2021. Whether this communication was "improper" as Plaintiffs suggest is an issue best saved for the following section on RUSCO's interests in the instant lawsuit.

months before filing this Motion in September. What this argument fails to recognize is that RUSCO sent this agreement to *thousands* of current and former workers as part of what RUSCO describes as a corporate re-branding and name change. This behavior by itself does not warrant the conclusion that RUSCO had knowledge of the litigation at bar.

In fact, RUSCO represents to the Court that it learned of this lawsuit five months before filing the instant Motion, and nothing in the record suggests otherwise. Therefore, the Court finds that RUSCO likely knew of the instant lawsuit for about five months before filing this motion, a delay of reasonable length under similar case law. *See Fed. Trade Comm'n v. Nudge, LLC*, 2020 WL 6881846, at *4 (D. Utah Nov. 23, 2020) (holding intervention motion filed within five months of learning interest was timely); *Ass'n of Prof'l Flight Attendants v. Gibbs*, 804 F.2d 318, 321 (5th Cir. 1986) (same).

Nevertheless, even assuming RUSCO knew for nine months, Plaintiffs have not suffered significant prejudice. *See Tyson Foods*, 619 F.3d at 1235 ("[D]elay in itself does not make a request for intervention untimely."). For one, the Court has stayed this case for most of its existence (Docs. 57, 80, 92) and has yet to rule on the conditional certification issue. Furthermore, the Opt-In Plaintiffs joined the lawsuit somewhat late in the game, meaning they cannot claim to have participated in every step of the litigation process since this lawsuit's inception. Therefore, the Court finds that the Motion is timely.

**B.  Interest Relating to the Transaction that is the Subject of the Action**

The Court now turns to the second element, whether RUSCO has established a sufficient interest in the instant litigation. "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, and the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned

persons as is compatible with efficiency and due process." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (quoting *Kany Cty. v. United States*, 928 F.3d 877, 889 (10th Cir. 2019)). The interest claimed in the litigation must be "direct, substantial, and legally protectable." *Id.*

RUSCO asserts two primary interests in the instant lawsuit against Tap Rock: (1) enforcing its arbitration agreement with the Opt-In Plaintiffs and (2) defending its "independent contractor" classification to protect its business model. The Court finds that each of these are valid interests, and that the instant litigation may adversely impact these interests.

### i.    RUSCO has a valid interest in enforcing its arbitration agreement.

In gaining access to RUSCO's services, both Opt-In Plaintiffs agreed to a seemingly broad arbitration provision.[6] Shortly after joining this lawsuit, Boyette executed with RUSCO an updated arbitration agreement, containing more restrictive language.[7] While Plaintiffs proffer a number of reasons why these agreements are unenforceable, determining the enforceability of such agreements is an analysis best saved for a subsequent motion to compel arbitration. RUSCO has assured the Court that upon allowing intervention, it will accordingly file such motion, but as of the date of the filing of this opinion, RUSCO and the Opt-In Plaintiffs have not fully litigated this issue. Thus, in resolving the instant Motion the Court focuses on whether RUSCO has asserted a sufficient interest to be afforded the opportunity to argue the enforceability of their arbitration agreements.

---

[6] It provides: "This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of these Terms." Doc. 115-3.

[7] It also provides: "This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of the Project, the Project Details, or this Agreement, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory, and regardless of whether a claim arises during or after the termination of this Agreement." Doc. 115-2.

Not too long ago, this very Court facing virtually the same facts and hearing arguments from the same attorneys now representing Plaintiffs held:

> [S]eeking to vindicate its [arbitration agreement] with Plaintiffs is a legitimate interest for [the intervenor] to protect. As a signatory to that [arbitration agreement]—indeed as its sole drafter—[the intervenor] has an interest in pursuing what it views as the benefit of its bargain. Denying [the intervenor] the ability to intervene and—at the very least—make the argument that its [arbitration agreement] be honored by its former employees is a result that Rule 24(a) is designed to protect.

*Bock v. Salt Creek Midstream LLC*, 2020 WL 3989646, at *4 (D.N.M. July 15, 2020). It turns out that numerous District Courts around the country facing essentially the same issue have also found an interest in enforcing similar arbitration agreements. *See Becker v. Delek US Energy, Inc.*, 2020 WL 4604544 (M.D. Tenn. August 11, 2020); *Altenhofen v. S. Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 3547947, at *1 (W.D. Ky. June 30, 2020) (intervention granted to staffing agency that employed plaintiffs pursuant to arbitration agreements, but which was not named in FLSA class action) (plaintiffs' counsel include Plaintiffs' counsel in instant action); *Ferrell v. SemGroup Corporation, et al.*, 485 F.Supp.3d 1334 (N.D. Ok. 2020) (same) (counsel again overlap), *overruled on other grounds at* 2021 WL 5576677 (10th Cir. Nov. 30, 2021); *Robertson v. Enbridge (U.S.) Inc.*, 2020 WL 2104911, at *1 (W.D. Pa. May 1, 2020) (same) (counsel again overlap); *Snow v. Silver Creek Midstream Holdings, LLC*, 467 F.Supp.3d 1168 (D. Wyo. 2020)) (same) (counsel again overlap). Tellingly, Plaintiffs conveniently avoid this backdrop of cases denying them the very relief they seek.

In short, *both* agreements are sufficiently broad such that RUSCO should be afforded the opportunity to argue that it can enforce its arbitration agreements against the Opt-In Plaintiffs. Therefore, the Court finds that RUSCO has an interest in enforcing these agreements. *See Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 246 (D.N.M. 2008) ("The threshold

8

for finding the requisite legally protectable interest is not high."). Nevertheless, Plaintiffs assert two theories in an attempt to overcome RUSCO's interest in enforcing these agreements. The Court rejects each theory in turn before returning to analyze whether RUSCO has a separate interest in defending its "independent contractor" classification.

### a. RUSCO did not "improperly" communicate with Opt-In Plaintiffs.

Both parties vehemently dispute whether RUSCO improperly communicated with the Opt-In Plaintiffs in January 2021. On one hand, Plaintiffs argue RUSCO "improperly" and "unethically" communicated with the Opt-In Plaintiffs by sending them an updated arbitration agreement, even though at the time they were already participating in the instant action and were represented by counsel. According to Plaintiffs, once the Court accounts for this so called "fruit of the poisonous tree,"[8] the original 2018 arbitration agreement is the only document left standing. Because this agreement only applies to disputes between Plaintiffs and RUSCO—not third parties, such as Tap Rock—RUSCO cannot compel the Opt-In Plaintiffs into arbitration as it so desires.

As Plaintiffs recognize in their Reply, whether these arbitration agreements are enforceable against the Opt-In Plaintiffs is an issue not yet before the Court. Notwithstanding, as for the updated 2021 agreement, the Court finds that Plaintiffs have not established sufficient facts suggesting that Boyette's execution of the agreement is what Plaintiffs refer to as "fruit of the poisonous tree." First, RUSCO sent this agreement to *thousands* of current and former RUSCO workers—including the Opt-In Plaintiffs—as part of its corporate rebranding and "an ordinary-course business process to update agreements." Doc. 117 at 2. This alone does not suggest that

---

[8] The Court acknowledges that the phrase, "fruit of the poisonous tree"—which Plaintiffs repeatedly use in their Response—traces its roots to the criminal context, particularly when courts suppress evidence obtained in violation of the U.S. Constitution. Because this Motion to Intervene appears in the *civil* context, the Court does not endorse this specific language. For the sake of this Order, however, the Court assumes that if RUSCO improperly contrived the updated agreement, said agreement would be rendered unenforceable.

RUSCO knew of the instant litigation or sought to trick them into arbitration. Second, this agreement was sent by RUSCO's *business* team, and only *lawyers* are prohibited from communicating with those participating in a lawsuit. N.M. R. Prof'l Cond. 16-402. In other words, "[p]arties to a matter may communicate directly with one another . . ." which is precisely what happened here. *Id.* at commentary 4.

Further, relevant case law provides that arbitration agreements executed by class members, or potential class members, during a lawsuit are enforceable absent evidence of misleading or coercive acts. *Kalenga v. Irving Holdings, Inc.*, 2020 WL 7496208, at *9 (N.D. Tex. Dec. 20, 2020); *Chester-Oster v. Goldman, Sachs & Co.*, 449 F.Supp.3d 216, 263–64 (S.D.N.Y. 2020) (post-complaint agreements with prospective class members enforceable unless "the result of coercion or deception"); *Norton v. Tucker Entertainment, LLC*, 2014 WL 5023654, at *2 (N.D. Tex. Oct. 8, 2014) (upholding arbitration clause Plaintiff entered into following filing of his FLSA complaint). Plaintiffs cite to Boyette's lack of memory executing this document, but this evidence is certainly not enough to suggest that RUSCO was coercive or misleading. If anything, the irony of Plaintiff's argument suggests that RUSCO, in fact, has a significant interest in the controversy at hand. On one hand, Plaintiffs paint RUSCO as merely an "oilfield matchmaker" with no legitimate interest in this dispute. But on the other, Plaintiffs contend that RUSCO should not have contacted the Opt-In Plaintiffs because of RUSCO's very relationship to this lawsuit. If RUSCO had no legitimate interest in the instant litigation, then communicating with the Opt-In Plaintiffs should not have posed any issue. This inadvertent concession assures the Court that RUSCO has *some* role in the instant litigation.

        b.        **RUSCO has standing to intervene.**

Not having alleged any claims against RUSCO, Plaintiffs argue that RUSCO has not suffered a current or future injury redressable by the instant lawsuit. Part and parcel of this argument, Plaintiffs contend that Tap Rock waived its right to compel arbitration by "fiercely" litigating Plaintiffs over the past two years, and this waiver applies with equal force to RUSCO, meaning that RUSCO cannot compel arbitration in the instant litigation. For these reasons, Plaintiffs assert that RUSCO lacks standing to intervene in the instant lawsuit.

The standards for ascertaining RUSCO's "interest" in the instant lawsuit as well as RUSCO's Article III standing to sue in the same lawsuit are roughly the same. As for the former, the interest claimed in the litigation must be "direct, substantial, and legally protectable." *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019). As for the latter, to establish standing a party must allege "a concrete or particularized injury that is actual or imminent." *Gormly v. City of Rio Rancho, New Mexico*, 2021 WL 1178626 (D.N.M. Feb. 9, 2021). No matter the legal niceties of the two, the Court finds that RUSCO's interest in enforcing their arbitration agreement—as well as its interest in defending its "independent contractor" classification, discussed below—satisfies both standards.

Furthermore, RUSCO's legal right to sue here does not depend on Tap Rock's inaction in the instant lawsuit. In other words, even if Tap Rock waived its right to compel arbitration after two years of litigation, the same result does not immediately apply to a related third party that recently discovered its interest in the lawsuit. In arguing to the contrary, Plaintiffs cite a case in which a *defendant* acted in such a way during litigation that was inconsistent with invoking the right to compel arbitration. *See In re Cox Enterprise, Inc.*, 790 F.3d 1112, 1116 (10th Cir. 2015). The facts at bar are clearly distinguishable, given that RUSCO is a third-party not named as a defendant in this lawsuit. Moreover, RUSCO learned of the lawsuit only five months before filing

11

its Motion to Intervene and has not itself acted in a way inconsistent with its right to compel arbitration.

Therefore, the Court finds that RUSCO has standing to intervene. *See Republic Bank & Trust Co. v. Kucan*, 245 Fed.Appx. 308, 310–11 (4th Cir. 2007).

> ii.  **Even assuming the arbitration agreement is unenforceable, RUSCO has a valid interest in defending its "independent contractor" classification and protecting its business model.**

Putting the arbitration agreements to the side, RUSCO also asserts an interest in defending its classification of Plaintiffs as "independent contractors"—the centerpiece of its business model. In a nutshell, Plaintiffs argue that they sued Tap Rock—not RUSCO—and so only Tap Rock's liability is at stake. They further contend that the Court may only look to the economic realities of the work relationship between Plaintiff and Defendant and thus, RUSCO's external agreements with the Opt-In Plaintiffs are irrelevant. Plaintiffs further assert that an adverse decision against Tap Rock will have no impact on RUSCO's business practices.

The Court disagrees. First, almost as if repeated in the same response brief to the same potential intervenors in similar suits across the country, these arguments have been overwhelmingly rejected by various federal district courts. *See supra* n.4. Second, no matter how Plaintiffs characterize the situation, they cannot credibly argue that an adverse decision against Tap Rock *would not* adversely impact RUSCO's business model. The Court returns again to its decision in *Bock* where the intervenor asserted the same interest against workers proffering the same defense. There, the Court held:

> Whether Plaintiffs agree or not, this lawsuit is every bit the full-scale assault on the [intervenor's] business model as it is on Defendant's. If at the conclusion of this litigation Defendant is found liable, [the intervenor] will face . . . the pressure associated with knowing that *its* pay practice and *its* personnel structure were found to have violated federal and/or New Mexico wage-and-hour laws. With threats like that to [the intervenor's] financial security and its business operations model,

12

denying [the intervenor] a podium in this debate is a result once again that Rule 24(a) is designed to prevent.

*Bock v. Salt Creek Midstream LLC*, 2020 WL 3989646, at *4 (D.N.M. July 15, 2020). As in *Bock*, the "transaction" between Plaintiffs and Defendant was only made possible by RUSCO's online platform and business model. A determination against Tap Rock classifying Plaintiffs as "employees" and not "independent contractors" would turn that same business model on its head and arguably threaten RUSCO's financial security. From its standpoint, RUSCO has asserted a financial interest worth protecting.

Additionally, Plaintiffs recycle past arguments by citing to *Statewide Masonry v. Anderson* for the proposition that "a mere economic interest is not enough" to permit intervention. 511 F.App'x 801, 804–05 (10th Cir. 2013) (unpublished). Yet, the same case states: "Indeed, this circuit recognizes that an economic interest can support intervention." *Id.* (citing *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1396 (10th Cir. 2009)). Because RUSCO's economic interest here is not nearly as attenuated as Plaintiffs suggest, this argument must also fail.

Therefore, even assuming RUSCO does not have an interest in enforcing its arbitration agreements, the Court finds that RUSCO has a valid interest in defending its "independent contractor" classification to protect its business model.

### C. Potential Impairment of RUSCO's Interests

Next, under Rule 24(a) of the Federal Rules of Civil Procedure, a nonparty seeking to intervene in litigation as of right must establish that the instant lawsuit could potentially impair its interests outlined above. "[T]he question of impairment is not separate from the question of existence of an interest." *Utahns for Better Transp. v. U.S. Dept. of Transp.*, 295 F.3d 1111, 1116 (10th Cir. 2002) (quoting *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001)). Under this standard, Plaintiffs restate all of their arguments above. For example, Plaintiffs argue

13

they have not alleged any claims against RUSCO, nor would finding against Tap Rock impair RUSCO's business model in any way. If RUSCO wants to participate, Plaintiffs assert, RUSCO can file an amicus brief. Nevertheless, in enunciating RUSCO's two interests above (enforcing their agreements and defending their business model), the Court has already discussed how the instant litigation would adversely impair these interests. The Court stands by those findings.

### D.  Inadequate Representation by Existing Parties

Finally, RUSCO must establish that Defendant cannot adequately represent its interest in the instant litigation. "This burden is 'minimal,' and 'it is enough to show that the representation 'may be' inadequate.'" *Kane County, Utah v. United States*, 928 F.3d 877, 892 (10th Cir. 2019) (quoting *Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). "The possibility of divergence need not be great in order to satisfy th[is] burden. An intervenor need only show the *possibility* of inadequate representation. Only when the objective of the applicant for intervention is identical to that of one of the parties is representation considered to be adequate." *Barnes v. Security Life of Denver Ins. Co.*, 945 F.3d 1112, 1124 (10th Cir. 2019) (emphasis in original) (internal quotations and citations omitted). Under this standard, Plaintiffs argue that RUSCO's interest should be presumed adequately represented. RUSCO and Tap Rock's interests are fundamentally aligned, they claim, in compelling Boyette and Moore into arbitration and classifying them as independent contractors. RUSCO needed to demonstrate adversity with Tap Rock, and RUSCO failed to do so.

The Court disagrees. First, RUSCO's interest in arbitration is inadequately represented because Tap Rock has not sought to compel Plaintiffs into arbitration. *See Atl. Refinishing & Restoration, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 272 F.R.D. 26, 30 (D.D.C. 2010) (granting intervention where intervenor sought intervention to compel arbitration, but "the defendant has not

14

advanced this defense"). Second, there is no denying that Tap Rock does not have the same motivation to defend RUSCO's business model as does RUSCO. The stakes are drastically different for both parties. Although aligned broadly in common cause against Plaintiffs, Defendant and RUSCO do not share identical or mutually symmetrical interests. Therefore, RUSCO and Tap Rock's interests in this litigation are divergent enough to satisfy the "minimal" burden that RUSCO' interests will be inadequately represented here. *See Bock v. Salt Creek Midstream LLC*, 2020 WL 3989646, at *4 (D.N.M. July 15, 2020).

## II.    Permissive Intervention

In addition to a third party's ability to intervene as of right, that party may also intervene as of the Court's discretion through Rule 24(b). To satisfy this rule, the party seeking intervention must establish "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. Pro. 24(b)(1)(B). In exercising its discretion to permit a party to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Tri-State Generation & Transmission Ass'n, Inc. v. New Mexico Pub. Regulation Comm'n*, 787 F.3d 1068, 1074 (10th Cir. 2015) (quoting Fed. R. Civ. P. 24(b)(3)). In arguing against permissive intervention, Plaintiffs reargue a number of their arguments above. First, they argue RUSCO has no "common claims or defense" in the instant litigation. And even if RUSCO held the right to arbitrate, Tap Rock's participation in litigation over the past two years has waived such right. Tap Rock's duties are entirely separate from RUSCO's, and looking to the Opt-In Plaintiffs' agreement with RUSCO is unnecessary to ascertain Tap Rock's liability. RUSCO is simply attempting to prejudice the Opt-In Plaintiffs by forcing them into arbitration.

The Court again disagrees. First, there are common questions of law; namely, the enforcement of the Opt-In Plaintiffs' arbitration agreements and their independent contractor

classification. *See DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002). The case also entails common questions of fact; namely, whether Opt-In Plaintiffs' pay and duties qualified them as overtime exempt under the FLSA. In fact, RUSCO engineered the very payment scheme that led to this potential class action and was the entity that actually paid the Opt-In Plaintiffs for their work. All such procedures—outlined in their agreement with RUSCO—are highly relevant to the case at bar. Finally, the Court finds that RUSCO's intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). The Court in Section I.A has already found that the Motion was timely, and that Plaintiffs will not have suffered significant prejudice with this case having been stayed for most of its existence.

Therefore, RUSCO shall be permitted to intervene as of the Court's discretion. *See Bock*, 2020 WL 3989646, at *6.

## CONCLUSION

**For the above stated reasons,** RUSCO may intervene in the instant litigation both as of right and as of the Court's discretion. Accordingly, the Motion (Doc. 115) is hereby **GRANTED.**


**IT IS SO ORDERED.**

_____
**WILLIAM P. JOHNSON**
**CHIEF UNITED STATES DISTRICT JUDGE**