UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| GARY MARTIN, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:20-cv-00170 |
| | Jury Trial Demanded |
| v. | Collective Action (29 U.S.C. § 216(b)) |
| TAP ROCK RESOURCES, LLC | Class Action (Fed. R. Civ. P. 23) |

**PLAINTIFF'S UNOPPOSED MOTION TO APPROVE FLSA SETTLEMENT ATTORNEYS' FEES AND COSTS AND PLAINTIFF'S SERVICE AWARD**

**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Richard M. Schreiber**
Texas Bar No. 24056278
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF AND PUTATIVE CLASS MEMBERS**

Plaintiff Gary Martin ("Plaintiff") submits this unopposed motion to request approval of his settlement and dismissal of Plaintiff's claims against Defendant Tap Rock Resources, LLC (Tap Rock or Defendant) (Martin, the Settlement Collective Action Members, and Defendant together, the "Parties"). Accordingly, Plaintiff respectfully requests the Court grant this motion and approve the requested attorneys' fees and costs, as well as Plaintiff and Opt-in Plaintiff's service awards.

**1.      INTRODUCTION**

The Parties seek Court approval of the Settlement Agreement which has been attached as Exhibit 1 (filed under seal). The Parties' settlement covers 22 individuals identified by identification number on Exhibit 1(D) ("Settlement Collective Action Members"), all of whom Plaintiff alleges were misclassified as independent contractors, paid a daily rate but were not paid overtime in violation of the FLSA. Doc. 1. If the Settlement is approved, the Settlement Collective Action Members will receive a notice explaining the nature, terms and scope of the settlement, and the amount of compensation they will receive. The proposed notice is attached as Exhibit 1(B). If the Settlement Collective Action Member returns a consent form (Exhibit 1C), they will join the settlement. After the notice period, the settlement administrator, Simpluris, ("Administrator") will send a check to each Settlement Collective Action Members who returns a consent form, which represents their share of the proposed settlement based on the formula provided in the notice. Those Settlement Collective Action Members who negotiate and execute their checks will release their wage and hour claims against Defendant. Settlement Collective Action Members will have 60 days to opt into the settlement and 60 days to execute and deposit their checks.

After arms-length negotiations, including two full day mediations, the Parties reached an agreement on the settlement amount for the Settlement Collective Action Members and also

negotiated several non-monetary terms. A copy of the final Settlement Agreement and Release ("Settlement Agreement") is attached as Exhibit 1.

**2.  BACKGROUND**

Plaintiff filed this case on February 27, 2020, on behalf of himself and other similarly situated oilfield workers. Doc. l. Plaintiff alleges they were paid a daily rate but were not paid overtime in violation of the FLSA. *Id.* Defendant denied the allegations and raised several affirmative defenses, including that Plaintiff and other putative collective members were not Defendant's employees and thus were properly classified as independent contractors, and, even assuming they were Defendant's employees, they were subject to overtime exemptions.

The investigation and litigation against Tap Rock have been ongoing for over two years. The Parties attended mediation in May of 2021 and again in February of 2022. The Parties exchanged extensive information related to potential damages and liability issues, and eventually agreed on the terms which are memorialized in the Settlement Agreement before this Court for approval.

**3.  KEY TERMS OF SETTLEMENT**

The Settlement Agreement obligates Defendant to pay a maximum settlement amount to settle the claims of the Settlement Collective Action Members in this Action ("Gross Settlement Amount"). As set forth in Exhibit 1, the Gross Settlement Amount covers all wage and hour claims covered by the Settlement Agreement, service award, attorneys' fees and costs.  The Gross Settlement Amount excludes the employer's share of payroll taxes and the administrative costs of administering the settlement.  The Net Settlement Amount represents the amounts that will be used to pay those Settlement Collective Action Members who elect to opt-in to the settlement.  The Net Settlement Amount was calculated by deducting the service award, attorneys' fees and costs.

The Administrator will send each of the Settlement Collective Action Members a personalized version of the notice documents attached as Exhibit 1(B). These documents clearly explain the nature, terms, and scope of the settlement, the release and the amount of compensation they may recover from the settlement. The Settlement Collective Action Members will have 60 days to consent to the settlement.

The Net Settlement Amount will be distributed on a pro rata basis to those individuals who opt-in to the settlement.

The potential amount that each Settlement Collective Action Member who opts-in, is attached as Exhibit 1(D). By consenting and cashing their checks, the individuals who opt-in to the settlement ("Opt-In Plaintiffs") will release Defendant (inclusive of the Releasees as defined in the Settlement Agreement) from any claims that were or could have been asserted based on the facts alleged in the action, including any claims for alleged failure to pay overtime wages under local, state, or federal law, including but not limited to the Fair Labor Standards Act, or any claim for liquidated or multiple damages, penalties, restitution, interest, attorneys' fees or costs, declaratory relief, equitable relief, or injunctive relief for any such claims, for the Settlement Time Period. Defendant will not fund any portion of the Settlement for Settlement Collective Action Members who do not opt-in to the lawsuit.

Only Opt-In Plaintiffs who cash their Settlement Award will be bound by the terms of the Settlement Agreement. The rights of Settlement Collective Action Members who do not affirmatively choose to participate by returning their consent form will not be impacted.

**4.      THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT**

The Parties now seek the Court's approval of the Settlement Agreement attached as Exhibit 1. Courts have held that FLSA claims asserted in a private action may only be compromised after the

district court reviews and approves the terms of the settlement. *Morton v. Transcend Servs., Inc.*, 2017 WL 977812, at* 1 (D. Colo. Mar. 13, 2017) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1353 (11th Cir. 1982)). "Settlements may be permissible in the context of a suit brought by employees because initiation of the action … provides some assurance of an adversarial context." *Lynn's Food Stores*, 679 F.2d at 1354. "The employees are likely to be represented by an attorney who can protect their rights under the statute." *Id.* Under these circumstances, the court should approve a settlement that represents "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1354-55. The United States District Court of New Mexico has adopted this same analysis. *See, e.g., Rodarte v. Board of County Com'rs of Bernalillo Cnty.*, 2015 WL 5090531, at *7 (D.N.M. Aug. 28, 2015) ("[T]he Court will subsume its discussion of those factors to the more general concerns identified by the Baker court as dispositive to Lynn's Food."). That being said, "an extensive review of every FLSA settlement has never been required by the Tenth Circuit" nor by this District. *See, e.g., Acevedo v. Southwest Airlines Co.*, 2019 WL 6712298, at *6-7 (D.N.M. Dec. 10, 2019) (citing *Arnold v. Navika Capital Grp., LLC*, No. 14-CV-378-GKF-FHM, 2016 WL 8198319, at *1 (N.D. Okla. May 20, 2016) ("[B]ecause the Tenth Circuit has not yet required court approval for FLSA settlements, the movants remain free to enter into the settlement agreements, if they so desire."); *Fails v. Pathway Leasing Ltd. Liab. Co.*, No. 18-cv-00308-CMA-MJW, 2018 WL 6046428, at *4 (D. Colo. Nov. 19, 2018) (holding, in the FLSA context, "the Court is not required to review the merits of the settlement agreement, and the parties may no longer wish for the Court to do so")). As set forth below, the Parties' settlement meets the criteria for approval.

### A. A Bona Fide Dispute Existed Between the Parties.

The Settlement Agreement resolves a bona fide dispute. In the instant case, the Parties

contested the claims and defenses asserted. Plaintiff alleged that Settlement Collective Action Members were paid a daily rate without a guaranteed salary which violated the overtime requirements of the FLSA. Defendant argued that these individuals were not its employees and thus were properly classified as independent contractors. Additionally, Defendant also argued that, even assuming the individuals were Defendant's employees, they were still properly classified as exempt employees and thus not entitled to the payment of overtime. Plaintiff also alleged that Defendant acted in bad faith and willfully violated the FLSA. Defendant denied violating the FLSA and denied acting willfully or in bad faith.

Further, this case was settled after over two years of discovery, litigation, and extensive work by the Parties. Counsel performed extensive research and investigation regarding Defendant's pay practices, potential liability, financial viability and whether Defendant acted in good faith (or willfully) in its classification of the Settlement Collective Action Members. The Parties worked to resolve various disputed issues, such as issues regarding conditional certification and damage calculations. The Parties conducted extensive motion practice. And if the case were not settled, there would be vast work to come, including dispositive motions, depositions, associated discovery disputes, questions regarding applicability of the FLSA, good faith, willfulness, decertification, pretrial motions, trial, and potential appellate issues. The Parties performed significant work, which prepared both sides to recognize and appreciate the risks of proceeding if this case were not settled.

### B. The Settlement is Fair and Reasonable.

"To be fair and reasonable, an FLSA settlement must provide adequate compensation to the employee and must not frustrate the FLSA policy rationales." *Solis v. Top Brass, Inc.*, 2014 WL 4357486, at *3 (D. Colo. Sept. 3, 2014). In determining whether a settlement is fair to the parties in a FLSA

collective action, this Court looks at whether the settlement reflects the legal and factual disputes "at play when the settlement was reached while compensating FLSA collective action members with a significant portion of the amount Plaintiffs sought at trial." *Rodarte*, 2015 WL 5090531, at *9. Courts assessing an FLSA settlement for fairness and reasonableness examine factors that apply to proposed class action settlements under Rule 23(e), including: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Hoffman v. Poulsen Pizza LLC*, 2017 WL 25386, at *4 (D. Kan. Jan. 3, 2017) (citing *Barbosa v. Nat'l Beef Packing Co.*, 2014 WL 5099423, at *7 (D. Kan. Oct. 10, 2014)). "If the settlement reflects a reasonable compromise over issues such as FLSA coverage or computation of back wages that are actually in dispute, the Court may approve the settlement to promote the policy of encouraging settlement of litigation." *Id.*

### i.     The Agreement was Fairly and Honestly Negotiated

First, the settlement was fairly and honestly negotiated by counsel experienced with FLSA actions. Defendant produced data for Settlement Collective Action Members showing hours worked and compensation received. Both Parties created damage calculations based on the pay and time data. The Parties went through multiple offer and demand cycles. The negotiations by experienced counsel support that the settlement agreement was fairly and honestly negotiated. The negotiations included two full day mediations.

### ii.     The Ultimate Outcome of the Ligation was Unknown

Second, serious questions of law and fact exist as to whether Defendant are liable to Plaintiff and the Settlement Collective Action Members and, if so, in what amounts. The Parties dispute the

6

hours worked, the classification of the Settlement Collective Action Members, the exemption status of the Settlement Collective Members, whether Defendant acted in good faith and thus whether liquidated damages are appropriate, and whether Defendant acted willfully, which would affect whether Settlement Collective Action Members may recover under a two-year or three-year statute of limitations. The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### iii.     The Value of the Settlement is Significant

Third, the immediate recovery offered by the proposed settlement outweighs the potential value of the case if the Parties continued litigating the matter. As mentioned, there are legal and factual uncertainties surrounding liability and damages. If the Parties proceeded to litigate the matter instead of settling, the next steps would require the Parties to engage in lengthy and costly discovery, disputes and motion practice regarding decertification, which would likely be followed by cross-motions for summary judgment and potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed settlement guarantees Plaintiff and Settlement Collective Action Members will receive a substantial recovery.

### iv.     The Settlement is Fair and Reasonable

Fourth, the Parties agree that the settlement is fair and reasonable. The Settlement Agreement was signed by Named Plaintiff Martin, and Defendant. All Settlement Collective Action Members will be provided a Notice of Settlement and may participate in the settlement should they choose to. If they do not wish to participate in the settlement, their claims will be unaffected. This supports that the Parties agree the settlement is fair and reasonable.

v. **<u>The Requested Attorneys' Fees are Reasonable</u>**[1]

Fifth, the amount of attorneys' fees requested by Plaintiff's counsel herein are fair and reasonable. The FLSA provides that the Court "shall ... allow [plaintiff] a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); *see Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014); *Robles v. Brake Masters Sys.,* No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *19, (D.N.M. Jan. 31, 2011) (The Court has recognized in other cases that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *Tabb v. Mentor Prot. Serv. LLC*, No. CIV-17-1139-D, 2018 WL 5269828 *1 (W.D. Okla. Oct. 23, 2018). Although the fee is mandatory, the Court has discretion to determine the reasonableness of the amount requested. *See Olivo v. Crawford Chevrolet Inc.*, 526 Fed. App'x 852, 855 (10th Cir. 2013). The Court should find that the percentage of the Gross Settlement Amount allocated to attorney fees is within the customary fee range approved by courts in this circuit and that the amount requested is fair and reasonable under the circumstances. *See, e.g., Ostrander v. Customer Eng'g Servs., LLC*, 2019 WL 764570 *6 (D. Colo. Feb. 21, 2019) ("fees have ranged from 4 per cent to 58 per cent" of settlement fund); *Davis v. Crilly*, 292 F. Supp. 3d 1167, 1174 (D. Colo. 2018) (award equal to 37% of gross settlement amount "well within the normal range for a contingent fee award"); *McKinley v. Mid-Continent Well Logging Serv., Inc.*, Case No. CIV-14-649-M (Doc. No. 48) (W.D. Okla. Mar. 2, 2016) (approving fee award of 40% of gross settlement fund). The percentage requested here falls with the same range.

---

[1] Defendant does not join in the facts and arguments asserted with regard to attorneys' fees and costs but does not oppose Plaintiff's request for attorneys' fees and costs, as provided in the Settlement Agreement.

**5.     THE COURT SHOULD APPROVE THE ATTORNEYS' FEES AND COSTS**

The amount of attorneys' fees requested by Plaintiff's counsel herein are fair and reasonable. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1308 (10th Cir. 2014). An award of attorneys' fees under the FLSA is mandatory, with the amount of the fees within the discretion of the Court. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions); *Olivo v. Crawford Chevrolet Inc.*, 526 Fed. Appx. 852, 854 (10th Cir. 2013) ("As prevailing parties on this claim, plaintiffs were entitled to an award of attorney's fees under 29 U.S.C. § 216(b)"); *Weiser v. Pathway Servs. Inc.*, No. 17-CV-673-GKF-FHM, 2019 WL 6723563, at *1 (N.D. Okla. Aug. 26, 2019) (same); *Ali v. Jerusalem Restaurant, Inc.*, No. 14-CV-00933-MEH, 2015 WL 1345326, at *5 (D. Colo. Mar. 23, 2015) (same). An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

While the Tenth Circuit applies a hybrid approach in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the settlement fund recovered. *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method, because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel is retained on a contingent fee basis, as in this case." *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 484 (10th Cir.1998); *see Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir.1993); *Lucken Family Ltd.*

9

*Partnership, LLP v. Ultra Resources, Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *2 (D. Colo. Dec. 22, 2010). In common fund cases, utilizing the percentage method to calculate attorney fee awards is the standard. *See Gottlieb v. Barry*, 43 F.3d 474, 482-83 (10th Cir. 1994). The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have been accumulated. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010).

In assessing the reasonableness of attorney fee awards in class actions, some courts within the Tenth Circuit have considered twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) that include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *5 (D. Colo. Nov. 13, 2013). Rarely are all *Johnson* factors applicable. *Id.*

Considering the circumstances presented herein, Class Counsel's requested attorney fees and litigation expenses are imminently reasonable as both a percentage of the total common settlement fund and under the *Johnson* factors.

### A. FLSA Collective Actions are Inherently Complicated and Class Counsel is Experienced and Skilled in Handling the Same.

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. Three fundamental questions governed this case: (1) whether Plaintiffs were misclassified as independent contractors (2) whether Plaintiffs were improperly classified as exempt employees; and (3) whether these questions could be resolved on a collective action basis. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g.*, *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs); *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment). FLSA collective action cases such as this are the main focus of Class Counsel's docket. Although Class Counsel is based in Texas, both Josephson Dunlap, LLP and Brucker Burch, PLLC have a national docket of FLSA cases, with litigation across the United States, not only in Texas, but also in Alaska, California, Florida, Georgia, Illinois, Kentucky, Louisiana, Nebraska, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Virginia, Washington, West Virginia, Wyoming, Delaware, and elsewhere. In recent years, Class Counsel's joint docket has carried around or over 250 cases involving collective action claims for oilfield workers, such as this case.

Class Counsel's experience has caused it to review and become familiar with a large body of

11

documents and information concerning FLSA litigation, which benefits cases such as this and maximizes the settlement value of the case. Class Counsel's experience in this field has also resulted in a familiarity with the evidence and testimony necessary to the successful prosecution of cases such as this. Indeed, as one court has expressly noted only about two years ago, "the firms involved in this case on the Plaintiffs' side are **among the most experienced and best regarded in this specialized practice area**." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (emphasis added); *see also Horton v. Right Turn Supply, LLC*, No. 2:19-CV-1271-NR, ECF 48, at *8 (W.D. Pa. Apr. 23, 2020) (finding attorneys at Josephson Dunlap "conduct[] themselves professionally, demonstrate[] deep knowledge of wage-and-hour law, and [are] diligent and responsive to the Court's orders."). In all, Class Counsel has secured hundreds of millions of dollars in settlements in FLSA cases for their clients.

Although FLSA cases are not novel, FLSA work is a specialized area of law where extra skill is needed to litigate, especially in a case such as this that began as a single plaintiff with a complaint against a large oilfield organization which blossomed into a case potentially nearly 20 Settlement Collective Action Members. *Whittington*, 2013 WL 6022972, at *6; *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). In addition to the number of potential Settlement Collective Action Members, resolving the procedural issues, the merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6.

As courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking of the clock from taking other cases (factor 4) given that counsel took a chance on a possible recovery in a contingent fee case rather than strictly working on an hourly basis. As set forth below,

Class Counsel spent significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Class Counsel.

### B. The Time and Labor Required was Substantial and Class Counsel's Requested Costs are Reasonable (Factors 1 and 7).

Regarding the time and efforts required of Class Counsel (factors 1 and 7), this matter has been pending for two years. During this time, Class Counsel drafted numerous motions and responses, reviewed thousands of pages of documents, and numerous communications.

In addition, Class Counsel seeks its reasonable unreimbursed costs. "Expenses are compensable in a common fund case if the particular costs are the type typically billed by attorneys to paying clients in the marketplace." *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42 of Stephens Cty., Okla.*, 8 F.3d 722, 725-26 (10th Cir. 1993). Here, Class Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, mediation costs, photocopying and duplication, postage and other delivery fees, Pacer charges, and legal research. These are the types of costs normally billed to clients. *See Aragon*, 2018 WL 6620724, at *7; *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2014 WL 4670886, at *5 (D. Colo. Sept. 18, 2014). These expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Agreement, Defendant do not object to the request for costs.

Finally, the requested attorney fee award of 40% of the Gross Settlement Amount, is well within the acceptable range of contingency fees similar cases in this Circuit. *See Robles v. Brake Masters Sys.*, No. CIV 10-0135 JB/WPL, 2011 WL 9717448, at *19 (D.N.M. Jan. 31, 2011) ("Fees in the range

of 30–**40%** of any amount recovered are common in complex and other cases taken on a contingent fee basis.") (emphasis added); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.*, Nos. CIV 89–822–T and CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (same).

### C. Class Counsel Represented Plaintiff on a Contingency Basis (Factors 5, 6, 10, 12).

Next, the separately-negotiated, agreed contingency fee (factors 5, 6, 10, and 12) in the Professional Services Agreement between Plaintiff and Class Counsel provides for a contingency fee of 40% of the gross settlement amount. Class Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Class Counsel would have carried various advanced costs, as well as unrecoverable time spent. Class Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g.*, *Aragon*, 2018 WL 6620724 at *6; *Shaw*, 2015 WL 1867861, at *4. The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of an FLSA case] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir. 2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA "attorneys' fees included in a settlement agreement requires … deference by the district court to the parties' agreement." *Id.*

### D. Class Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).

Class Counsel's request for attorneys' fees in the amount of 40% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit. As some courts have

noted, the "customary contingency fee" awarded to class counsel in a common fund FLSA collective action settlement such as this is approximately 30-40 percent. *See, e.g.*, *Davis*, 292 F. Supp. 3d at 1174 (approving a fee award for 37% of the gross settlement amount and finding it "well within the normal range for a contingent fee award); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ("[a] 30% common fund award is in the middle of the ordinary 20%-50% range and is presumptively reasonable"); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation,* Case Nos. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (noting "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *see also Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001) (finding the "customary contingency fee" within the range of 35% to 40%).

In relation to the undesirability of the case (factor 10), as referenced above, Class Counsel took this case on a contingency basis during a lull in the oil and gas industry. This slowed down the FLSA collective action process and created additional research and expenses. It could also increase both Parties' expenses in this matter if the Settlement Agreement is not approved. Lastly, this is a case involves exemption defenses and economic reality factors, which make litigation highly fact intensive.

### E. Degree of Success Obtained is High (Factor 8).

Finally, "the most critical factor in determining a fee award is the degree of success obtained." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). The degree of success here is high because Defendant vigorously contested Plaintiff's claims and denied that Plaintiff and the Settlement Collective Action Members were improperly paid, underpaid, or that any alleged damages are owed. The Settlement represents a significant recovery for Plaintiff and the Settlement Collective Action Members. This is especially true when weighing a few of the Parties' highly disputed issues: (1) whether

Plaintiffs were properly classified as independent contractors; (2) whether Plaintiffs were exempt under one or more exceptions to the FLSA's overtime requirements; (3) whether Defendant' alleged FLSA violations were made in good faith; and (4) whether Defendant' alleged FLSA violations were willful.

For these reasons, Plaintiff believes a fee of 40% is reasonable and necessary in this case. Class Counsel also seeks reimbursement of their advanced litigation expenses.

**6.     THE COURT SHOULD APPROVE THE SERVICE AWARDS**

Plaintiff's requested service awards are reasonable. Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Acevedo v. Southwest Airlines Co.*, No. 1:16-cv-00024-MV-LF, 2019 WL 6712298, at *4 (D.N.M. Dec. 10, 2019) (approving incentive award in FLSA collective action); *Pilego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016). The reasonableness of a service award to a named plaintiff is not generally listed as a factor to consider when deciding whether to approve a settlement. *Thompson v. Qwest Corp.*, No. 17-CV-1745-WJM-KMT, 2018 WL 2183999, at *3 (D. Colo. May 11, 2018).

Nevertheless, when evaluating the reasonableness of an incentive award, courts may consider factors such as the actions the plaintiff took to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation, and reasonable fears of retaliation. *Pilego*, 313 F.R.D. at 131.

Importantly, courts in this Circuit have found significantly higher incentive awards reasonable in other FLSA/employment cases. *See, e.g.*, *Gundrum v. Cleveland Integrity Servs., Inc.*, No. 17-CV-55-TCK-tlw, 2017 WL 3503328, at *5 (N.D. Ok. Aug. 16, 2017) (granting FLSA named plaintiffs normal

service awards of $20,000); *Shaw v. Interthinx, Inc.,* No. 13-CV-01229-REB-NYW, 2015 WL 1867861, at *1 (D. Colo. Apr. 22, 2015) (approving $10,000 incentive award to named plaintiff in wage and hour dispute); *see also Lucken Family Ltd. Partnership, LLP v. Ultra Resources, Inc.*, No. 09-CV-01543-REB-KMT, 2010 WL 5387559, at *8 (D. Colo. Dec. 22, 2010) (approving $10,000 service award to named plaintiff).

The proposed $30,000.00 total service award to Plaintiff and Opt-in Plaintiff, Bragg, are reasonable and Defendant does not oppose this amount. The service award represents a nominal amount of the Gross Settlement Amount and is intended to recognize initiative and efforts on behalf of the Settlement Collective Action Members and the time and effort Plaintiff and Opt-in Plaintiff contributed to this Lawsuit and the settlement over the last 2 years. Indeed, Plaintiff and Opt-in Plaintiff expended significant effort and time in educating Class Counsel regarding the Settlement Collective Action Members' job experiences and Defendant's policies and procedures, as well as in assisting in the litigation by providing documents and information related to his work for Defendant and participating in settlement discussions and the settlement approval process to help ensure the Settlement Collective Action Members recover the unpaid wages. Plaintiff and Opt-in Plaintiff also participated in discovery, provided declarations, and had multiple telephone conferences with Class Counsel and their staff over the course of the litigation.

Because Plaintiff and Opt-in Plaintiff represented the interests of the Settlement Collective Action Members and worked diligently to ensure the Settlement Collective Action Members could recover the wages they are allegedly due, the proposed $30,000.00 service award is reasonable.

7.  **CONCLUSION**

For all the reasons set forth herein, the Plaintiff respectfully requests his Unopposed Motion for Settlement Approval be granted in full.

                                              Respectfully Submitted,

                                              */s/   Richard M. Schreiber*
                                                      **Michael A. Josephson**
                                                        Texas Bar No. 24014780
                                                       **Andrew W. Dunlap**
                                                       Texas Bar No. 24078444
                                                       **Richard M. Schreiber**
                                                       Texas Bar No. 24056278
**Josephson Dunlap, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:   (713) 352-1100
Facsimile:    (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**Bruckner Burch PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:   (713) 877-8788
Facsimile:    (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, I served the foregoing document on all parties and/or their counsel of record via this Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Richard M. Schreiber*
Richard M. Schreiber

## CERTIFICATE OF CONFERENCE

Plaintiff's Counsel conferred with Defendant's counsel regarding the relief presently requested. Defendant is unopposed.

*/s/ Richard M. Schreiber*
Richard M. Schreiber